BAKER *v.* GRICE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 836. Argued January 26, 1898. — Decided February 21, 1898.

While Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the statement of the case (below), to issue a writ of *habeas corpus*, yet those courts ought not to exercise that jurisdiction, by the discharge of a prisoner, unless in cases of peculiar urgency, but should leave the prisoner to be dealt with by the courts of the State; and even after a final determination of the case by those courts should ordinarily leave the prisoner to his remedy by writ of error from this court.

Upon the facts appearing in this case no sufficient case was made out for the exercise of the jurisdiction of the Circuit Court by the issue of a

writ of *habeas corpus* to take the prisoner out of the custody of the state court.

It is the rule of courts, both state and Federal, not to decide constitutional questions until the necessity for such decision arises in the record before the court.

THIS appeal is from an order of the United States Circuit Court for the Northern District of Texas, made upon a return to a writ of *habeas corpus*, issued by that court to inquire into the cause for the detention of the petitioner, William Grice, who, it was alleged, was unlawfully restrained of his liberty by and held in the custody of J. W. Baker, the sheriff of McLennan County, Texas. After a hearing, the Circuit Court, on the 22d of February, 1897, discharged the petitioner. 79 Fed. Rep. 627.

The petition for the writ was filed on the 9th of December, 1896, and therein the petitioner, among other things, made the following allegations: That he was unlawfully restrained of his liberty by the sheriff of McLennan County, Texas, having been surrendered by his sureties under a recognizance which he had theretofore given; that he was detained by the sheriff under an indictment preferred against him and other citizens of the United States on the 21st of November, 1894. The indictment charged that William Grice, E. T. Hathaway and several others, named in the indictment, unlawfully combined and engaged among themselves and with others, who were unknown to the grand jury, in a conspiracy against trade, and that they had created a trust by a combination of their capital, skill and acts for the purpose of creating and carrying out restrictions in trade. The indictment was based upon an act passed by the legislature of Texas on the 30th of March, 1889, which is generally known and described as the anti-trust act of that State. When the indictment was presented, the defendants (including the petitioner herein) were arrested and brought before the proper court and entered into a recognizance conditioned for their appearance in court from day to day and term to term to answer the indictment. On the 2d of December, 1895, the case was regularly called, and the defendants, pursuant to the provisions of the code of crim-

inal procedure of the State of Texas, announced a severance, and thereupon E. T. Hathaway, one of the defendants named in the indictment, was placed on trial to answer the charges contained therein. Before proceeding to trial on the merits, he in effect demurred to the indictment on the ground, among others, that the above named act of the State of Texas was a violation of the Federal Constitution, for reasons which he stated. The demurrer was overruled and the trial of the cause was then proceeded with, and on the 12th of December, 1895, a verdict of guilty as charged in the indictment was rendered, and the jury assessed defendant's punishment at a fine of $50. Hathaway duly took proceedings for the purpose of obtaining a review by the Court of Criminal Appeals of the State of Texas of the various matters raised by the demurrer and in the course of his trial.

Under the law of Texas, one who is convicted of a felony, although the punishment imposed is only a fine, is still necessarily subjected to confinement in the jail pending the determination of any appeal which he may take, and under that provision the defendant Hathaway was subjected to confinement in jail pending the determination of his appeal.

It was argued in the Court of Criminal Appeals on the 29th day of January, 1896, and was not decided until the 24th day of June, 1896, leaving the defendant Hathaway in the meantime incarcerated in the McLennan County jail. On the last mentioned day the Court of Criminal Appeals decided the case, but did not pass upon the constitutionality of the act under which the indictment was framed, although that question had been raised in the court below and presented to the appellate court on the argument of the appeal. The court decided the appeal upon another ground, which the petitioner herein calls a technical ground of pleading, the court holding that because the indictment presented failed to charge Hathaway with knowingly carrying out as agent the stipulations, purposes, prices, etc., under the alleged conspiracy, the admission of evidence to that effect over the objection of the defendant was unwarranted in law, and the conviction was therefore invalid. The appellate court there-

upon reversed the judgment and remanded the cause for a trial *de novo.*

Since· the rendition of this judgment two terms of the criminal court in the proper county have been held, one of which was drawing near its close at the time that the petitioner filed his petition, December 9, 1896, and the petitioner then makes this allegation: that "While this petitioner, together with his co-defendants who have been arrested and placed in recognizance, have stood ready and anxious for trial upon said indictment, yet said case has not even been called by the court for trial, nor has said cause been set for trial, but the same has been permitted to remain upon the docket of said court, subjecting this petitioner and his co-defendants not only to the shame and contumely of an indictment for felony, but denying to him and his co-defendants the right to be heard in his defence in said court as a citizen of the United States, and whereby this petitioner, as well as his co-defendants, are without remedy in the state courts of Texas for the assertion and vindication of their rights under the Constitution of the United States." It is then shown in the petition that on the 24th of November, 1896, Hathaway, one of his co-defendants, procured from the Circuit Court of the United States a writ of *habeas corpus*, requiring the sheriff of McLennan County, who then had him in custody, to produce the body of said Hathaway, and that the writ was served upon the sheriff, who made return that he held his prisoner under the indictment above mentioned.

A hearing before the court was then set for the 7th of December, 1896, and notice thereof was given to the sheriff and prosecuting officers of the county of McLennan, advising them of the proceedings and of the time when the matter would be inquired into. On the 7th of December, the state court dismissed the indictment and prosecution as against Hathaway, leaving the same to stand unimpaired as to the petitioner herein and his co-defendants. This action on the part of the state court, the petitioner charges, was for the purpose of defeating the jurisdiction of the United States court upon the writ of *habeas corpus*, which had then been issued,

and to thereby prevent that court from passing upon the constitutional rights of said Hathaway. After this discharge by the state court, the sheriff made return, setting up that fact and that he claimed no further right or custody over the relator.

The petitioner then avers that the act in question violates the Constitution of the United States for the reasons which he names, and that by reason of the premises "he is without remedy for the assertion and vindication of his rights as a citizen of the United States under the Constitution thereof; that he has stood under indictment for felony, charged with the violation of said alleged statute of the State of Texas, approved March 30, 1889, for the period of two years without being afforded an opportunity by the state courts of Texas for the assertion of his rights, as aforesaid, as a citizen of the United States. Your petitioner believes, and so avers, that it is the purpose and intent of the state authorities of the State of Texas to prevent, if possible, any appeal by this petitioner to the courts of the United States for the vindication of his rights as aforesaid as a citizen of the United States. In view of the premises herein recited and without the interposition of this honorable court for his due protection and the due conservation of his rights, as a citizen of the United States, he is practically remediless by an appeal in regular course or otherwise." The petitioner, therefore, asked for a writ of *habeas corpus* in order that he might be discharged from custody.

The writ having been duly served, the sheriff made return showing that he held the petitioner by virtue of a writ issued upon the indictment, and he further alleged that the authorities had been anxious and ready to accord all the defendants under the indictment that speedy trial which they were guaranteed under the constitution and the laws of the State of Texas; that the delay had come in great part from the action of the defendants; that at the first term of court after the indictment was presented, the case was set down for trial on the 14th of March, and was thereafter continued by agreement between the State and the defendants; that at the succeeding

September term the case was set down for trial on October 4, and on that day it was postponed upon motion of the defendants and set down for the November·term, to be tried on the 2d of December, 1895, and that when the cause was called on that day the defendants, including the petitioner, claimed a severance, to which they were entitled under the laws of Texas, and forced the State to try Hathaway alone, thereby avoiding and defeating a trial·of the petitioner herein. The sheriff further returned that the purpose of the petitioner and his co-defendants was, as he believed, to defeat the jurisdiction of the courts of Texas in the administration of its laws; and that the relator and his co-defendants had agreed among themselves to have their several sureties surrender them into the custody of the sheriff, and that by their own acts and at their own request and by their own procurement the sureties of petitioner and his co-defendants did surrender them, and on the day of the surrender and contemporaneously with it a writ of *habeas corpus* from the Circuit Court was served upon the sheriff, commanding him to produce before the court *instanter* the body of petitioner.

Attached to the return were the affidavits of the sureties of the petitioner, in which they said in substance that the petitioner wanted them to surrender him to the sheriff on the day named, and that by his request they went to the lawyer's office and met the petitioner and accompanied him to the office of the sheriff, where they surrendered him to the sheriff.

The petitioner filed a replication which was in substance an admission of the truth of many of the allegations made in the return and the accompanying affidavits, but denied their materiality, and claimed that they furnished no answer to the allegations of the petitioner, as contained in his petition. The relator did deny that he had conspired or confederated for the purpose of defeating the jurisdiction of the courts of Texas or the administration of its laws; on the contrary, he alleged that for two years he and his co-defendants had submitted to the jurisdiction of the courts of Texas for the purpose of trial, and that when it became evident to the petitioner and his co-defendants that a trial was not to be had except at some

indefinite period in the future, if ever, then the petitioner " as a citizen of the United States proceeded to exercise his rights as such citizen and to call upon the courts of the United States to vindicate his rights as he was entitled under the Constitution and laws of the United States, and not for the purpose of defeating the jurisdiction of said courts of Texas, but for the purposes as indicated."

After hearing the parties, the Circuit Court decided that a proper case had been made out for its interference by virtue of the writ of *habeas corpus*, and thereupon held that the statute of the State of Texas called the anti-trust law was a violation of the Constitution of the United States, and, consequently, void. The court, therefore, discharged the petitioner, and from that order this appeal has been taken.

*Mr. M. M. Crane* for appellant.

*Mr. George Clark* and *Mr. Joseph H. Choate* for appellees. *Mr. John D. Johnson* and *Mr. D. C. Bolinger* were on *Mr. Clark's* brief. *Mr. S. C. T. Dodd* was on *Mr. Choate's* brief.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court.

The court below had jurisdiction to issue the writ and to decide the questions which were argued before it. *Ex parte Royall*, 117 U. S. 241; *Whitten* v. *Tomlinson*, 160 U. S. 231. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of *habeas corpus*, yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that instead of discharging they will leave the prisoner to be dealt with by the courts of the State; that after a final determination of the case by the state court, the Federal courts will even then generally leave the petitioner to his remedy by writ of

error from this court.  The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of *habeas corpus,* be taken out of the custody of the officers of the State and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a State be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued.  Such are the cases *In re Loney,* 134 U. S. 372, and *In re Neagle,* 135 U. S. 1, but the reasons for the interference of the Federal court in each of those cases were extraordinary, and presented what this court regarded as such exceptional facts as to justify the interference of the Federal tribunal.  Unless this case be of such an exceptional nature, we ought not to encourage the interference of the Federal court below with the regular course of justice in the state court.

The ground for the discharge of the petitioner in this case, as given by the court below, was because of the opinion of that court that the anti-trust law of the State of Texas violated the Constitution of the United States, and was therefore void. The question of the validity of that act of course exists whether the case be in the state court or a hearing transferred to the Federal court by virtue of the writ of *habeas corpus.*  It is the duty of the state court, as much as it is that of the Federal courts, when the question of the validity of a state statute is necessarily involved as being in alleged violation of any provision of the Federal Constitution, to decide that question, and to hold the law void if it violate that instrument.  But the state court is not bound to decide the constitutional question when there are other grounds for reversing a conviction under the law, upon pain of having its omission furnish a ground for Federal interference.

The special circumstances creating what the court below regarded as a necessity for its immediate action, and which made the case one of urgency, are stated in the opinion of the court rendered in discharging the prisoner.

The first circumstance stated is that the Court of Criminal Appeals did not decide, when it had the opportunity, the question of the constitutionality of the act in question, and that that court, while deciding it was unnecessary to pass upon the constitutional questions raised, " referred favorably to the decisions of the Supreme Court of the State in which the anti-trust law had been sustained in this regard." It is matter of common occurrence — indeed, it is almost the undeviating rule of the courts, both state and Federal — not to decide constitutional questions until the necessity for such decision arises in the record before the court. This court has followed that practice from the foundation of the Government, and we can see no reason for just criticism upon the action of the state court in refusing to decide the question of the constitutionality of this act, when, at the same time, it held in substance that there was no evidence upon which to sustain the conviction of the defendant upon the indictment then before it, and that therefore the judgment should be reversed. In granting a new trial, it cannot properly be urged that the court failed to fulfil its duty towards the defendant in any degree whatever, because it did not decide the constitutional question as desired by him. The decision of the case was upon such a ground that the probability was that no conviction of the defendant could thereafter be had under that indictment. When the judgment of conviction was reversed the defendant Hathaway gave bail, and remained at large until the proceedings for his discharge were taken some six months after the judgment of reversal had been given.

Criticism is also made upon the fact that the state court did not discharge Hathaway after the decision upon his appeal until the Circuit Court issued the writ of *habeas corpus* some six months thereafter. It does not appear that Hathaway had applied to have his case tried, nor to be discharged from the indictment by reason of the decision granting him a new trial. However that may be, Hathaway's case was finished by his actual discharge, and it has no further bearing upon the action of the state court in this case.

It is also said that since the trial of Hathaway and the

granting of a new trial to him the case of the petitioner has not been called for trial, and that two terms of court since the granting of a new trial to Hathaway had come and the second one was about expiring at the time when the petitioner filed his petition in the Circuit Court for this writ. Here again there is no allegation and no proof that any attempt had been made on the part of this petitioner to obtain a trial in the state court or that he had been refused such trial by that court upon any application which he made. It is the simple case of a failure to call the indictment for trial, the petitioner being in the meantime on bail and making no effort to obtain a trial and evincing no desire by way of a demand that a trial in his case should be had.

We do not say that a refusal to try a person who is on bail can furnish any foundation for a resort to the Federal courts, even in cases in which a trial may involve Federal questions, but in this case no refusal is shown. A mere omission to move the case for trial (the party being on bail) is all that is set up, coupled with the assertion that defendant was eager and anxious for trial, but showing no action whatever on his part which might render such anxiety and eagerness known to the state authorities.

It was also stated that the petitioner could expect little better results on a trial of his case in the state court than obtained upon the trial in the *Hathaway case.* We think this statement is entirely without proof or even probability. The petitioner was indicted as one of several defendants under the same statute, and it is claimed that those of them mentioned in the indictment who resided in Texas were situated similarly to Hathaway. The probability, therefore, would be exceedingly strong that if the petitioner were tried upon the indictment found against him he would have to be acquitted by direction of the court for lack of evidence, under the decision of the Criminal Court of Appeals in Hathaway's case.

We are of opinion that neither one of the grounds taken by the court below nor all combined furnish any reason for the discharge of petitioner upon the writ issued by that court. The surrender of the petitioner by his bail at his request and

his consequent imprisonment furnishes in itself no ground of urgency for the interference of a Federal court. The imprisonment is entirely voluntary, and while the surrender by his bondsmen may be good for the purpose of avoiding any technical objection to the issuing of the writ founded upon the fact that the petitioner was on bail, yet the fact of imprisonment under such circumstances adds nothing to the strength of his case as calling for the interposition of the Federal court. This whole case is clearly nothing but an attempt to obtain the interference of a court of the United States when no extraordinary or peculiar circumstances exist in favor of such interference.

Upon the facts appearing herein, we think no sufficient case was made out for the exercise of the jurisdiction of the Circuit Court. We come to this decision irrespective of the question of the validity of the state statute and without passing upon the same or expressing any opinion in regard thereto.

If this application had been made subsequently to a trial of the petitioner in the state court and his conviction upon such trial under a holding by that court that the law was constitutional, and where an appeal from such judgment of conviction merely imposing a fine could not be had, excepting upon the condition of the defendant's imprisonment until the hearing and decision of the appeal, a different question would be presented and one which is not decided in this case, and upon which we do not now express any opinion.

*The order of the Circuit Court for the Northern District of Texas must be reversed, and the case remanded to that court with instructions to set aside the order discharging the prisoner, and to enter an order remanding him to the custody of the sheriff.*

---

In BAKER *v.* AUSTIN, No. 337; BAKER *v.* HAWKINS, No. 338; and BAKER *v.* FINLEY, No. 339, involving the same question and argued with this case, the same order is made.