Ex parte REARICK.

(Circuit Court, M. D. Pennsylvania. December 8, 1902.)

No. 1.

1. HABEAS CORPUS—FEDERAL AND STATE COURTS.

While the United States courts have power to intervene by habeas corpus in a case where a disregard of the federal law is charged, it is not always expedient to do so, involving as it does a conflict of authority which it is desirable to avoid.

2. SAME—JURISDICTION—INTERSTATE COMMERCE—CANVASSER'S LICENSE.

Where, therefore, an agent of a nonresident corporation was arrested for violating a borough ordinance imposing a license on canvassers, and on conviction an appeal was allowed to a higher state court, he was not entitled to a discharge on habeas corpus in the federal courts, pending determination of the appeal in the state court, on the ground that the ordinance under which he was convicted was invalid as against him, as a regulation of interstate commerce.

Habeas Corpus to the Sheriff of Northumberland County, Pennsylvania, in Said District, to Secure the Discharge of the Relator.

¶ 2. Jurisdiction of federal courts in habeas corpus proceedings, see note to In re Huse, 25 C. C. A. 4.

The following facts were agreed upon as controlling the disposition of the writ:

N. L. Rearick, the relator, is an agent of the Citizens' Wholesale Supply Company, a corporation of the state of Ohio, located and doing business as grocers at Columbus, in that state. In the conduct of its business the company employs various agents in different parts of the country, who solicit orders for groceries and other articles of domestic use, by going personally to houses of residents and exhibiting samples, from which selections are made and orders given. These orders are forwarded to the company at Columbus, and are there by them filled and forwarded in packages so marked by numbers as to designate, by reference to a schedule, the exact package intended for each purchaser. These several packages are then shipped in convenient bulk to a second agent of the company at the place where the orders were taken, and by him received and delivered to the persons who gave them, at their respective residences; each being required to pay for the same at the time, after opportunity for inspection to see if they correspond with the samples exhibited. In pursuance of this general plan, in March and April last, one Kunkle went from house to house in the borough of Sunbury, Northumberland county, Pa., in said district, and solicited and obtained orders on the supply company for groceries and various other domestic articles. These orders, having been sent to the company, at Columbus, Ohio, were there carefully filled, and separate packages made up and marked for each customer; and the whole were then shipped by railroad to the relator, N. L. Rearick, another agent residing at Sunbury, who proceeded to deliver the packages and collect the money due thereon, which he remitted to the company. On April 14, 1902, while engaged in making such deliveries in the borough of Sunbury, he was arrested, on process from a justice of the peace of Northumberland county, for an alleged violation of an ordinance of said borough, of which the following is a copy:

"An ordinance: To provide for the licensing of canvassers and all other persons who sell at retail, by sample or otherwise, or who solicit orders at retail, or who solicit orders for, sell or deliver at retail, either on the streets or by traveling from house to house within the limits of the borough of Sunbury, any books, paintings, foreign or domestic goods, wares, merchandise or fruits, not of their own production or manufacture, and imposing a penalty for a violation of this ordinance.

"Section 1. Be it enacted and ordained by the borough of Sunbury, in town council assembled, and it is hereby enacted and ordained by the authority of the same, that after the passage of this ordinance it shall be unlawful for any person or persons to sell at retail, by sample or otherwise, or to solicit orders at retail, or to solicit orders for, sell or deliver at retail, either on the streets or by traveling from house to house within the limits of the borough of Sunbury, any books, paintings, foreign or domestic goods, wares, merchandise or fruits not of their own production or manufacture, without first obtaining from the chief burgess of the borough of Sunbury a license for such purpose.

"Sec. 2. The license fee required to be paid under this ordinance shall be as follows: For one day, two dollars; for one week, ten dollars; for one month, twenty dollars; for three months, fifty dollars; for six months, one hundred dollars; for one year, one hundred and fifty dollars.

"Sec. 3. Any person or persons violating this ordinance by selling, canvassing, soliciting or delivering as aforesaid, without having first obtained and paid for a license as required in sections one and two of this ordinance, shall, upon conviction thereof before any magistrate or justice of the peace residing in the said borough, forfeit and pay a fine not exceeding fifty dollars and not less than twenty-five dollars for the use of the borough aforesaid for each and every offense together with costs of prosecution; the costs of the magistrate, justice of the peace, and constable, to be the same as the costs fixed by law for them in similar cases. And any person or persons so convicted and fined, in default of payment thereof, together with costs aforesaid, shall forthwith be confined in the common jail for the county of

118 F.—59

Northumberland for a period of not less than fifteen and not more than ninety days, until such time as the costs and fine imposed, together with the prison charges accrued, be fully paid and satisfied.

"Sec. 4. The word 'retail' as used in this ordinance shall be construed to mean in small quantities, such as are usually immediately called for by customers.

"Approved December 9, 1899."

The relator had no license such as required by this ordinance, and at the hearing before the justice was convicted of violating it, and sentenced to pay a fine of $25 and costs, and in default to be committed to the jail of said county for 30 days, or until the fine and costs were paid. From this conviction he applied to the court of quarter sessions of the county for leave to appeal, which was allowed him, and thereupon entered bail for his appearance at the next term. Subsequently, however, he was surrendered by his bail to Samuel Deitrick, sheriff of the county, and by him committed to the county jail. To be released from this commitment the present writ was applied for, it being alleged that the relator, in his capacity as agent for the Citizens' Supply Company, was engaged in interstate commerce, and that the ordinance in question, so far as it attempted to interfere with him, was opposed to the provisions of the United States constitution, and therefore void.

Max L. Mitchell and P. S. Karshner, for relator.

Harry S. Knight, for respondent.

ARCHBALD, District Judge. The power of the United States courts to intervene by habeas corpus in a case where a disregard of the federal law is charged must be conceded, but to do so is not at all times expedient. To a certain extent, it involves a conflict of authority, which it is desirable, if possible, to avoid. For although the supremacy of the federal court in federal matters must be recognized, yet, where the state court has assumed jurisdiction, the discharge on habeas corpus of one who has been arrested on its process, or is bound by recognizance to observe its commands, is a direct interference with its proceedings, which nothing but the most urgent necessity justifies. Should the state court, either resenting the interference, or claiming that the case did not come within the federal law, determine to go on with it, notwithstanding the discharge, a direct clash between the state and the federal authorities would result, into which it is not well to be drawn. The state courts, both original and appellate, are bound by the constitution and the laws of the United States, the same as the courts of the general government, and are entirely competent to interpret and apply them. It is not to be assumed that they will not do so, and if they do not, or if they err in the application, the party aggrieved has a complete remedy by a writ of error to the United States supreme court, where justice will certainly be done.

In the present instance, if the relator had rested upon his conviction before the justice, or, upon application to the quarter sessions of the county for the allowance of an appeal, had been refused, a case for the intervention of this court on habeas corpus might have been presented. But instead of that, an appeal was allowed, and is now pending in the Northumberland sessions, where it would have come up in due course at the present term. There is no reason to suppose that it will not be correctly disposed of when it does. By entertaining the appeal the

court has shown its readiness to do justice to the relator, and, having the power to pass upon disputed questions of fact in a way that this court on habeas corpus would not have, there is every reason for awaiting the result. If the relator should have any cause of complaint with it when it comes, the higher appellate courts of the state are open to him, and last of all, as already suggested, the tribunal which in federal matters is supreme. The present writ may be a short cut to relief, but according to the views expressed in Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748, and Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 640, it is not one to be encouraged. Exercising, therefore, the discretion which is vested in me in the premises, I deem it best that the proceedings pending in the state court should be allowed to take their course.

Let the relator be remanded, and the writ discharged, without prejudice.