# HUNTER, SHERIFF OF BUNCOMBE COUNTY, NORTH CAROLINA, *v.* WOOD.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NORTH CAROLINA.

No. 474.  Argued December 18, 19, 1907.—Decided March 23, 1908.

Where the Circuit Court of the United States has, in an action within its jurisdiction, issued an interlocutory injunction against the enforcement of a state railroad rate statute, and in such order directed the conditions under which tickets shall be sold at rates higher than those prescribed under the state statute, a ticket agent who sells tickets in conformity with such conditions, and who is proceeded against, convicted, and sentenced therefor by the state authorities, is in custody for an act done pursuant to an order, process or decree of a court or judge of the United States within the meaning of § 753, Rev. Stat., and may apply for a writ of *habeas corpus* to the United States circuit judge who has the power and right under such section to discharge him.

*Ex parte Young, ante,* p. 123, followed as to the jurisdiction of the Circuit Court of the United States of such an action.

JAMES H. Wood, the appellee, being one of the ticket agents of the Southern Railway Company, was, on July 17, 1907, charged in the police justice's court of the city of Asheville, in the county of Buncombe, in the State of North Carolina, with unlawfully and willfully overcharging one T. J. Harmon for a railroad ticket from Asheville, North Carolina, to Canton, North Carolina, in violation of the state law. He was arrested and brought before the court, and on the trial, July 18, 1907, was convicted and sentenced by the court to imprisonment in the county jail of Buncombe county for the term of thirty days, to be worked out on the public roads of that county for that time, and to pay all costs.

The appellee applied to the United States circuit judge in the Western District of North Carolina for a writ of *habeas corpus* to be directed to Hunter, appellant, as sheriff of Buncombe

county, to inquire into the cause of his detention and to obtain his discharge. The writ was issued and, after a hearing, the Circuit Judge discharged the appellee from imprisonment, and directed that a copy of the order of the discharge should be certified to the police justice's court of the city of Asheville and to the sheriff of Buncombe county, in whose custody the petitioner then was. *Ex parte Wood*, 155 Fed. Rep. 190.

It appeared that prior to the passage, in 1907, of the acts of the North Carolina legislature in relation to passenger and freight rates on railroads within the State, the Southern Railway Company were charging the rates then allowed by law. After the passage of the acts above mentioned, which greatly reduced the rates of compensation for the transportation of both passengers and freight, the Southern Railway Company commenced a suit in equity in the Circuit Court of the United States for the Western District of North Carolina against the corporation commission and the attorney general and assistant attorney general of the State, to enjoin the taking of any proceedings or the commencement of any suits or actions to enforce the acts in question or to recover penalties for the disobedience of such acts by the company. The bill alleged that the acts were unconstitutional, and that if the rates were enforced the result would be to prevent the company earning anything upon its investment, and deprive it of its property without due process of law, and deny it the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States. The bill also averred that a duty rested upon the corporation commission and the attorney general and assistant attorney general to take such proceedings as they might deem expedient for the enforcement of the acts, and that the corporation commission would, for the purpose of putting the acts into effect, do those things which it was provided should be done, and in case of continuous refusal on the part of the company to charge only the rate specified the attorney general and his assistant would proceed to enforce the same as prescribed in the acts.

The Circuit Judge upon this bill granted an interlocutory injunction, until the further order of the court, against the members of the corporation commission and the attorney general and assistant attorney general, restraining them from taking any proceedings towards the enforcement of the acts, or putting the acts in respect to freight charges or passenger rates, or any part or either of the acts, into effect, and from prosecuting any suit or action, civil or criminal, against the railway company, its officers, agents or employés. The order also provided for the execution of a bond on the part of the railway company in the sum of $325,000, conditioned to pay into the registry of the court from time to time, as the court might order, such sums of money as should be equal to the difference between the aggregate freight and passenger rates and excess baggage charges, charged and received by the company for intrastate service on its lines in the State of North Carolina, and what would have been the aggregate amounts for such service at the rates fixed in or under the acts of the assembly, above mentioned. The order provided a method of procedure by giving to each purchaser of a ticket a coupon for the payment of the difference stated, on presenting the coupon to the registry clerk, if the act should be finally held valid

Section 4 of the act of the legislature, prescribing the maximum charges for the transportation of passengers in North Carolina, enacted that any railroad company violating the provisions of the act should be liable to a penalty of five hundred dollars for each violation, payable to the person aggrieved, recoverable in an action in his name in any court of competent jurisdiction in the State; and any agent, servant or employé of a railroad company violating the act was declared guilty of a misdemeanor, and, upon conviction, was to be punished by fine or imprisonment, or both, in the discretion of the court. The act in relation to freight, by the second section, provided that if the company should make charges for the shipment of freight in violation of the act it should be guilty of a misdemeanor, and, upon conviction, fined not less than one hundred

dollars, and the officer or agent should be fined or imprisoned, or both, in the discretion of the court.

Upon the hearing of the motion for an injunction, after granting the same, the Circuit Judge wrote an opinion (155 Fed. Rep. 756), in which he reached the conclusion that § 4 of the act in regard to passenger rates was on its face unconstitutional and void.

Notwithstanding the fact that an injunction had been granted, proceedings were thereafter taken against the appellee, a ticket agent of the company, to punish him for not complying with the act in relation to the sale of tickets, resulting in his conviction, as already stated.

The sheriff of Buncombe county, in whose custody the appellee was restrained, duly appealed to this court from the order discharging the appellee from his custody.

*Mr. E. J. Justice, Mr. J. H. Merrimon* and *Mr. C. B. Aycock* for appellant on the point of whether the remedy of *habeas corpus* was proper:

The writ from a Circuit Judge to a sheriff cannot properly require the production of a prisoner held by the sheriff for violation of a state law, when the prisoner has had a trial with right to sue out a writ of error to the United States Supreme Court, or when he is about to be put upon his trial, if these facts appear upon the face of the petition, or upon the return of the sheriff such are found to be the facts; in such case this ousts the jurisdiction of the Federal judge who issued the writ, and he should so hold and discharge the writ. Whenever it appears that the prisoner is held by an officer of the state court for a violation of the state law, and is not denied a hearing, the jurisdiction of the Federal judge who issued the writ of *habeas corpus* is ousted, and the prisoner must make his application for his writ of *habeas corpus* to a state court.

This is so even though the guilt or innocence of the prisoner depends upon whether the state law is in conflict with the Federal Constitution, for this can be determined by the state court, and finally by the Supreme Court of the United States. *Ex*

*parte Crouch,* 112 U. S. 178; *Ex parte Fonda,* 117 U. S. 516; *Ex parte Royall,* 117 U. S. 241; *In re Thomas H. Harding,* 120 U. S. 782; *Ex parte Ayres,* 123 U. S. 443; *State of New York* v. *Eno,* 155 U. S. 90; *Thomas* v. *Loney,* 134 U. S. 372; *Pepke* v. *Cronan,* 155 U. S. 98; *Andrews* v. *Swartz,* 156 U. S. 273; *Bergemann* v. *Backer,* 157 U. S. 655; *Whitten* v. *Tomlinson,* 160 U. S. 234; *Minnesota* v. *Brundage,* 180 U. S. 499; *Storti* v. *Massachusetts,* 183 U. S. 46; *Reid* v. *Jones,* 187 U. S. 151; *Riggins* v. *United States,* 199 U. S. 547; *Fitts* v. *McGhee,* 172 U. S. 516.

*Mr. Alfred P. Thom, Mr. Walker D. Hines* and *Mr. Alexander P. Humphrey* for appellee on the same point:

Wood's release upon writ of *habeas corpus* was a lawful and essential step in carrying out the decision of the court and enforcing the jurisdiction of the court.

Revised Statutes, § 753, sanctions the use of the writ of *habeas corpus* in the present case, because Wood was in custody for an act done in pursuance of an order of a court of the United States.

The right of the court to protect its order and process by the issue of the writ is unquestioned.

The expediency of the action of the court is manifest.

The court had decided that the passenger-rate statute ought not to be enforced pending final determination of the question. This decision would have been absolutely nullified if the agents of the railway company could have been imprisoned by the state authorities. This is not a mere surmise as. to possible consequences, but is simply a statement of what was imminent at the time of Wood's arrest and subsequent discharge.

Not only was the supremacy of the judicial power of the United States menaced by the action of which the arrest and conviction of Wood was a part, but the whole interstate commerce of the Southern Railway Company and its transportation of the United States mails were vitally involved.

For illustrations of the discharge of persons in custody (under state authority) upon writs of *habeas corpus* by Federal courts

to effectuate their jurisdiction, see *United States* v. *Spink*, 19 Fed. Rep. 631; *In re Houston*, 94 Fed. Rep. 119; *Anderson* v. *Elliott*, 101 Fed. Rep. 609; *State* v. *Laing*, 133 Fed. Rep. 887.

The other questions involved in this case are fully discussed in *Ex parte Young*, *ante*, p. 123.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

After the jurisdiction of the Circuit Court of the United States had attached by the filing of the bill of complaint in the case already mentioned, of the *Southern Railway Company* v. *McNeil and others*, members of the Corporation Commission, and after the issuing and service of the injunction, as above stated, the defendant Wood, acting under and in obedience to the provisions of such injunction, sold the railroad tickets at the usual price and at the same time complied with the conditions contained in the injunction, by giving the coupons for the difference in price, and while so complying with the terms of such injunction was arrested and proceeded against criminally for disobedience of the act fixing rates. Being detained in custody by virtue of this conviction by one of the police courts of the State, he had the right to apply for a writ of *habeas corpus* to the United States Circuit Judge, and that judge had power to issue the writ and discharge the prisoner under § 753 of the Revised Statutes of the United States (1 U. S. Comp. Stat., p. 592), as he was then in custody for an act done pursuant to an order, process or decree of a court or judge of the United States. See *In re Neagle*, 135 U. S. 1. The writ being properly issued, the judge had the right, and it was his duty, to examine into the facts, and he had jurisdiction to discharge the petitioner under the circumstances stated.

The other questions raised herein have been sufficiently discussed in *Ex parte Young*, just decided, and require no further attention.

For the reasons given in that opinion, the order appealed from herein must be

*Affirmed.*

MR. JUSTICE HARLAN, dissenting.

In my judgment the appellee should have been put to his writ of error for the review of the judgment against him in the highest court of the State, competent under the state laws to reëxamine that judgment—thence to this court to inquire whether any right belonging to him under the Federal Constitution had been violated. He should not have been discharged on *habeas corpus. Ex parte Royall,* 117 U. S. 241; *Minnesota* v. *Brundage,* 180 U. S. 499; *Urquhart* v. *Brown,* 205 U. S. 179, and authorities cited in each case.

Upon the question as to what is and what is not a suit against the State within the meaning of the Eleventh Amendment, my views are fully expressed in my dissenting opinion in *Ex parte Young,* just decided. For the reasons there stated I dissent from the opinion and judgment of the court in this case.