**UNITED STATES of America ex rel. Malcolm H. WALDRON, Jr.**

v.

**William LENNOX, Sheriff, Philadelphia County**

**and**

**Edward J. Hendrick, Supt. Philadelphia Prisons.**

**No. 2986.**

United States District Court
E. D. Pennsylvania.

July 26, 1965.

Malcolm W. Berkowitz, Philadelphia, Pa., for plaintiff.

Graeme Murdoch, Dept. of Justice, Commonwealth of Pa., Harrisburg, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Relator, Malcolm H. Waldron, Jr., an attorney, was originally arrested on April 9, 1965, charged with embezzlement and conspiracy. On May 11, 1965, he filed with the Federal District Court a petition for a writ of habeas corpus, a stay of state proceedings [1] and a writ of certiorari. I have concluded after a thorough examination of the precedents for these unusual proceedings as well as of the record at all stages of the instant matter that although this Court has jurisdiction, the issuance of a writ is not warranted under the circumstances.

Philadelphia Quarter Sessions Court ordered Waldron held on the same charges under the same bail [2] and Relator was bound over for Grand Jury action.[3]

On April 30, 1965, Relator surrendered himself to his bondsman and returned to the custody of the Sheriff of Philadelphia, apparently in order to file a writ of habeas corpus with the proper state court, the Court of Common Pleas. Judge Raymond Pace Alexander set May 3, 1965, as the hearing date and released Waldron on $5,000 bail. Judge Theodore Reimel dismissed Relator's petition after that hearing.

## I.

After preliminary arraignment on state charges, Waldron was held on April 9, 1965, the day of his arrest, under $5,000 bond, entered by a professional surety. On April 23, 1965, the Commonwealth offered evidence at a preliminary hearing. Judge Vincent A. Carroll of

## II.

The threshold question raised by the Commonwealth that Relator has not exhausted his state remedies is disposed of by Commonwealth ex rel. Nichols v. Hendrick, 197 Pa.Super. 646, 180 A.2d 88 (1962).[4] There, as here, the relator had been arrested and held for indict-

---

1. On May 11, 1965, all parties entered into a stipulation agreeing to a stay of the state proceedings as follows:

   "STIPULATION

   "AND NOW, this 11th day of May, 1965, the Court having entered an Order in the above captioned matter, at approximately 4:00 P.M., and the representatives of the District Attorney's Office and the Attorney General's Office having contacted the Court pertaining to the Order, it is agreed by all of the undersigned counsel that the Order in the above captioned matter on page 2, paragraph 1, will be amended to now provide as follows:

   "IT IS FURTHER ORDERED that all proceedings in the state courts of Pennsylvania pertaining to the charges pending against Malcolm H. Waldron, Jr., as stated in the annexed petition for writ of habeas corpus, will be stayed so far as the filing of an indictment against the said Malcolm H. Waldron, Jr., pending determination of the issues raised by the petition.

   /s/ Graeme Murdoch
   Deputy Attorney General
   Dept. of Justice, Commonwealth of Pa.

   APPROVED:                                        /s/ Joseph M. Smith
   A. Leon Higginbotham, Jr.              Assistant District Attorney
              J.                                              /s/ Malcolm W. Berkowitz
                                                               Counsel for Relator

---

2. N.T., 143.

3. Grand Jury action has been stayed until the outcome of this petition. See n. 1, supra.

4. Federal law also requires dismissal of the Commonwealth's contention that exhaustion is lacking. Professor Anthony Amsterdam in his recent article which may become a classic in this field has

pointed out that Section 2254 of Title 28, U.S.C. limits the exhaustion requirement to one held under the "judgment of a state court." Congress excluded language in the 1948 Code as originally proposed in the House that would also have required exhaustion of one held under the "authority of a state officer." See H.R. 3214, 80th Cong., 1st Sess. § 2254 (1947). Clearly the attempt was to exclude pre-

ment of the Grand Jury but he had not been tried on the merits of the criminal charges. The Pennsylvania Superior Court dismissed as interlocutory an appeal from a dismissal of the petition for a writ of habeas corpus alleging irregularities in the preliminary hearing. Since, therefore, at this stage no appeal from the denial of the writ by the state court is possible, Waldron has exhausted remedies available to him in the state courts at this time. Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 827, 9 L.Ed. 2d 837 (1963).

### III.

The gravamen of Relator's petition is that he is being held without probable cause.[5] The Commonwealth's major grounds for dismissal are two:[6] first, that this Court is without jurisdiction because custody[7] over Relator was obtained by his own voluntary surrender of his bail; second, that Relator has failed to state a cause upon which relief can be granted. The federal cases most often discuss the jurisdictional question in conjunction with the merits in a case such as this and thus have evolved a rule sensitive to comity considerations but allowing the writ in "exceptional cases." Henry v. Henkel, 235 U.S. 219, 228, 35 S.Ct. 54, 56, 59 L.Ed. 203 (1914).[8] Thus, the general practice of the federal courts has been to decide such

conviction habeas corpus cases, as the legislative history of the section makes clear. See S.Rep. 1559, 80th Cong., 2d Sess. 9 (1948). Amsterdam, "Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial." 113 U.Pa.L.Rev. 793, 891, n. 417 (1965).

5. In the related area of federal prosecutions, where no comity problems exist, federal courts recognize that a relator is entitled to pretrial release where he is held without probable cause. See Price v. Henkel, 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581 (1909); Reis v. United States Marshal, 192 F.Supp. 79 (E.D.Pa. 1961). United States v. Peckham, D.C. N.Y., 143 F. 625, 627 (1906) discusses the question of federal court power when a petitioner alleges he is held without any probable cause: "It was within his [Relator's] power by writ of habeas corpus and writ of certiorari to bring the whole record before either the Circuit or District Court for review. Had he done so and had the court issuing the writ held that there was no evidence of the commission of a crime or that there was no evidence that the defendant was probably guilty of the commission of a crime as charged in the indictment, or that the indictment did not charge a crime, it would have so determined and would have ordered the discharge of the defendant. It was within the power of either of these [federal] courts to in effect nullify the decision and holding of the commissioner."

6. I have carefully considered Relator's numerous other allegations of deprivation of due process and equal protection and I find that all of these contentions are similarly without constitutional merit. They include allegations that a Common Pleas Court judge and not a magistrate issued the complaint; that Relator's preliminary hearing was not held in the usual place; that a deputy attorney general improperly superseded the District Attorney in presenting the prosecution's case against Relator; that the issuing authority failed to endorse on the complaint that there was probable cause; and that the complaint against Relator failed to summarize the facts on which the warrant was based. Any resulting prejudice, such as "newspaper stories which appeared as a result of the manner in which Mr. Waldron was arrested" (Habeas Corpus Hearing, N.T. 32) would be for the trial court and clearly not a matter fitting the standard for pretrial release discussed in this opinion.

7. Section 2241 of 28 U.S.C. provides:
  "(c) The writ of habeas corpus [shall] not extend to a prisoner unless—
  *   *   *   *   *
  "(3) He is in custody in violation of the Constitution or laws or treaties of the United States; * * *."

8. Although in Henry v. Henkel, 235 U.S. 219, 228, 35 S.Ct. 54, 56 (1941), the Supreme Court cautioned against exploring beyond jurisdiction in any but exceptional circumstances, Professor Amsterdam with the citation of abundant authority has written: "This concept that the inquiry on habeas corpus is limited to 'jurisdictional' questions has long since been abandoned." Amsterdam, supra, at 887, n. 397.

cases on the merits and not to refuse jurisdiction. Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748 (1897); Ex parte Royall, 117 U.S. 241, 65 S.Ct. 734, 29 L.Ed. 868 (1886).

█ Moreover voluntary surrender will not defeat federal habeas corpus jurisdiction. Baker v. Grice, supra, and Ex parte Royall, supra, are two celebrated cases where the relator, having been arrested by state authorities on state charges, and having obtained bail, nevertheless successfully acquired federal jurisdiction when they voluntarily surrendered themselves.[9]

## IV.

Baker v. Grice, 159 U.S. 284, 18 S.Ct. 323 (1897), is the model for decision in the instant matter.[10] The petitioner

there, as here, surrendered himself to his sureties on a state criminal charge in advance of trial [11] and then sought a federal habeas corpus writ. Significantly, although the Supreme Court reversed the decision of the court below to grant the writ, the very first sentence of the opinion notes: "The court below had jurisdiction to issue the writ, and to decide the questions which were argued before it." [12] The Court's language provides a particularly relevant guide for dealing with Relator's petition here:

> From [the] cases it clearly appears, as the settled and proper procedure, that while circuit courts of the United States have jurisdiction, under the circumstances * * * to issue the writ of habeas corpus, yet those courts ought not to exercise that jurisdiction by the discharge of

9. The Supreme Court in Wales v. Whitney, 114 U.S. 564, 571, 5 S.Ct. 1050, 1053, 29 L.Ed. 277 (1885) defined with particular precision the kind of restraint necessary for the issuance of the writ: "Its purpose is to enable the court to inquire, first, if the petitioner is restrained of his liberty. If he is not, the court can do nothing but discharge the writ. If there is such restraint, the court can then inquire into the cause of it, and if the alleged cause be unlawful, it must then discharge the prisoner. * * * Something more than moral restraint is necessary to make a case for habeas corpus. There must be actual confinement or the present means of enforcing it. The class of cases in which a Sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition."

10. Even before Baker there was Supreme Court authority for pretrial release of state prisoners on habeas corpus. See Hunter v. Wood, 209 U.S. 205, 28 S.Ct. 472, 52 L.Ed. 747 (1908); Cook v. Hart, 146 U.S. 183, 194–195, 13 S.Ct. 40, 36 L.Ed. 934 (1892); Whitten v. Tomlinson, 160 U.S. 231, 241–242, 16 S.Ct. 297, 40 L.Ed. 406 (1895).

11. The development of habeas corpus as a postconviction remedy is a relatively recent phenomenon. Professor Amsterdam writes: "Habits of thought generated by

three-quarters of a century of application of the exhaustion doctrine make it difficult for American courts and lawyers today to conceive of federal habeas corpus as anything but a postconviction remedy. The nineteenth century Congresses which expanded the habeas corpus jurisdiction to its present scope thought in no such terms. Prior to the twentieth century, postconviction use of the writ was rare * * * [C]ommon law *habeas corpus ad subjiciendum*, the great writ, developed principally as a remedy against executive detention without, or prior to, judicial trial; and the celebrated Habeas Corpus Act of 1679 authorized exclusively pretrial relief. Consistent with this background, the several congressional statutes extending federal habeas corpus to state prisoners were clearly designed in the class of cases with which each was principally concerned, to give prisoners held by state authorities in advance of state court processes an immediate federal judicial proceeding to secure their release. Amsterdam, supra, 884–85.

12. With the explicitness of the Supreme Court's holding of jurisdiction as noted in Baker, I cannot find controlling the contrary dicta in United States v. Estep, 150 F.2d 768 (3d Cir., 1945), a military draft evasion case; that dicta is rendered even less persuasive by reason of the Supreme Court's reversal, though on other grounds. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

*a prisoner unless in cases of peculiar urgency,* and that, instead of discharging, they will leave the prisoner to be dealt with by the courts of the state; that after a final determination of the case by a state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the federal courts, by which a person under an indictment in a state court, and subject to its laws, may, by the decision of a single judge of the federal court, upon a writ of habeas corpus, be taken out of custody of the officers of the state, and finally discharged therefrom, and thus a trial by the state courts of an indictment, found under the laws of a state be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued. Such are the cases In re Loney, 134 U.S. 372 [10 S.Ct. 584, 33 L.Ed. 949], and In re Neagle, 135 U.S. 1 [10 S.Ct. 658, 34 L.Ed. 55]; *but the reasons for the interference of the federal court in each of those cases were extraordinary,* *and presented what this court regarded as such exceptional facts as to justify the interference of the federal tribunal.* Unless this case be of such an exceptional nature, we ought not to encourage the interference of the federal court below with the regular course of justice in the state court.[13] (Emphasis added.)

■ Thus Baker v. Grice, supra, answers both of the questions raised in this matter: It holds that jurisdiction lies in a case where a relator who has previously posted bond voluntarily surrenders himself before trial.[14] And it sets up a standard of "peculiar urgency" or "exceptional facts" [15] for the issuing of a writ.

■ The Supreme Court in Baker documented its "peculiar urgency" standard by reference to two cases whose "exceptional facts" warranted federal intervention.[16] A comparison of those "exceptional facts" with the facts in this matter points up the failure of the Waldron facts to meet the Supreme Court test.

## V.

At the preliminary hearing Morton Weiman, a commercial finance broker

---

13. 169 U.S. 284, 290–291, 18 S.Ct. 323, 326.

14. Of course a prisoner cannot secure a writ solely "to obtain a summary disposition of the cause by this [federal] court * * * in order to secure a speedier hearing." In the Matter of Simon, 208 U.S. 144, 147–148, 28 S.Ct. 238, 239, 52 L.Ed. 429 (1907). Habeas corpus jurisdictional requirements would not be met under such circumstances since the purpose of the action would not be to secure the release of the prisoner but to hasten decision on the criminal matter.

15. Roughly three categories of "exceptional facts" have developed in this area: (1) urgent situations where the state prosecution impinges upon the authority of the federal government (see discussion of In re Neagle and In re Loney, at p. 245, infra; (2) prosecutions of an accused for numerous small offenses under an unconstitutional state statute where the burden of defense is dispro-portionate to the penalty upon conviction (Ex parte Kieffer, 40 F. 399 (C.C.D. Kan.1889); and (3) cases where state procedures effectively nullify a petitioner's habeas corpus rights, as when the state court fees are beyond the petitioner's means (Tillery v. Cave, 294 F. 2d 12, 16 n. 4 (3d Cir. 1961), cert. den. Tillery v. Maroney, 370 U.S. 945, 82 S.Ct. 1589, 8 L.Ed.2d 811 (1962); Amsterdam, supra, 892–96.

16. In its opinion in Baker, the Supreme Court specifically noted that although voluntary surrender gives a federal court jurisdiction to issue a writ, such "surrender of the petitioner by his bail, at his request, and his consequent imprisonment furnish, in themselves, no ground of urgency for the interference of a federal court" and thus do not in themselves provide the "exceptional facts" needed to obtain federal habeas corpus relief. 169 U.S. 284, 294–295, 18 S.Ct. 323, 327.

testified that Waldron brought him and Seymour L. Rosenfield [17] together for the transaction of a management contract of Empire Mutual Insurance Company from General Mutual (N.T. 107, 108). Weiman testified that he was told by "Mr. Waldron and Mr. Rosenfield" that Empire Mutual "wasn't in the best condition, but being as I was able to rescue some other companies out of trouble, here was an opportunity where I could come in basically without any money, and if I could get the company straightened out, I would have a good going insurance company." (N.T. 110). As a result, Waldron formed Certaintors, Inc., the company owned by Weiman which purchased the management contract from General Mutual, Inc. (N.T. 111). Waldron never gave Weiman any minute books or stock transfer book although Weiman became the President of the newly formed corporation, apparently without corporate action (N.T. 111, 112). Moreover the exchange of $2,587,302.86 in debentures as recited in the purchase agreement was never effected (N.T.114). Waldron was present at all the negotiations and drafted all the agreements (N.T. 116, 137). Weiman testified that Waldron did not, however, control the agreements but that the terms were controlled by himself and Rosenfield. Waldron did not sign the contracts.

A finding that these facts constitute no probable cause whatsoever to hold Waldron would require my drawing every inference available to Relator. Perhaps a jury might draw all such inferences in Waldron's favor, but as a matter of law where there are conflicting inferences, I must here accept those which are permissible against the Relator. Certainly Relator is entitled to no more in my evaluation of the evidence now than he would be had he been con-

victed pursuant to a final judgment. Probably at this pretrial level, the federal court's scrutiny should be even less. Where a relator has been convicted pursuant to a final judgment, a federal court's inquiry "turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all." United States ex rel. DeMoss v. Commonwealth of Pennsylvania, 316 F. 2d 841, 843 (3d Cir. 1963). See also United States ex rel. Mallory v. Myers, 240 F.Supp. 373 (E.D.Pa.1964); affirmed per curiam 3 Cir., 343 F.2d 912 (1965). Certainly here there is some evidence against Relator; admittedly at a trial this scintilla could vanish with Defendant's explanations, or, on the other hand, could become irrefutable with additional evidence presented by the Commonwealth. Because of the evidentiary sketchiness permissible at a preliminary hearing the federal court should be most meticulous to not resolve all inferences against the Commonwealth. Moreover, these facts on their face are not in the same category or urgency as the two examples of "exceptional facts" cited by the Supreme Court in Baker v. Grice, supra. In Thomas v. Loney,[18] 134 U.S. 372, 10 S.Ct. 584, 33 L.Ed. 949 (1890), the prisoner had been arrested on a Virginia state warrant for perjury in a United States government proceeding, where clearly the state was without any jurisdiction. In Cunningham v. Neagle,[19] 135 U.S. 1, 10 S.Ct. 658 (1890), a United States marshal had been arrested on a state murder charge after he had killed a man who had attempted to kill Supreme Court Justice Field. There, the relator had been acting under orders of the United States Attorney General. In both Loney and Neagle, the authority of the Federal government had been challenged by state criminal proceed-

17. Rosenfield is charged on five counts. Both he and Waldron are charged with conspiracy. Waldron is also charged on one count with embezzlement.

18. This case is sometimes called In re Loney.

19. This case is sometimes called In re Neagle.

ings.[20] No such unusual exigency is presented by the Waldron facts. While I do not imply that a deprivation must be as severe as in Loney and Neagle, certainly the facts before me now do not require federal intervention on constitutional grounds at an early stage of state criminal proceedings.

Mr. Justice Harlan dealt with a similar problem in Ex parte Royall, 117 U.S. 241, 251, 252–253, 6 S.Ct. 734, 740, 741 (1886) as we must meet Relator's case here. Royall was held under a Virginia statute later declared unconstitutional. Declining to issue the writ prior to trial. Justice Harlan wrote:

> We are of opinion that while the circuit court has the power to do so, and may discharge the accused in advance of trial if he is restrained of his liberty in violation of the national constitution, it is not bound in every case to exercise such power immediately upon application being made for the writ. * * * [T]his court holds that where a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States, the circuit court has a discretion whether it will discharge him upon *habeas corpus,* in advance of his trial in the court in which he is inducted; that discretion, however, to be subordinated to any special circumstances requiring immediate action.

Today I hold that there exist no special circumstances of the magnitude necessary for a federal court to interfere with normal state criminal procedures. Relator's writ must therefore be denied.

**20.** See also Ex parte Beach, 259 F. 956 (S.D.Calif.S.D.1919), where a federal court issued a writ discharging from state custody a United States Customs Service Deputy Collector who had surrendered himself into custody and had

sued for federal habeas corpus. The District Court found that in shooting at fleeing suspects the customs officer had acted on reasonable cause pursuant to his federal duties.