**UNITED STATES of America ex rel. Glenn C. PITTS**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.**

**Civ. A. No. 70-655.**

United States District Court, E. D. Pennsylvania.

March 25, 1971.

Jere R. Thomson, court-appointed, Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty., David Richman, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

JOSEPH S. LORD, III, Judge.

On June 21, 1967, at a preliminary hearing before a magistrate, relator was held for the Grand Jury on charges arising out of an incident which occurred on June 3, 1967. On July 5, 1967, at another preliminary hearing, relator was held for the Grand Jury on charges arising out of an incident which occurred on May 27, 1967. The 1967 July session of the Grand Jury presented Bills of Indictment Nos. 196–197 relating to the June 3 incident and Bills of Indictment Nos. 2719–2720 pertaining to the other incident.

After the return of the above-mentioned indictments, relator was convicted of first degree murder under Bills Nos. 516–520 (October Sessions, 1967) and sentenced thereunder to life imprisonment. This life sentence, now on appeal, which relator was serving at the time he filed his habeas corpus petition and which he is presently serving, is not attacked in this action. Rather, relator attacks solely the indictments Nos. 196–197 and 2719–2720, which he contends should be dismissed because he has been denied (1) his right to a speedy trial and (2) his right to challenge the Grand Jury array.

[■] Under Pennsylvania law, relator can never be paroled on his life sentence. 61 Pa.Stat.Ann. § 331.21 (1964). However, there is the possibility that relator may ultimately defeat his murder conviction, in which event Pitts and the Commonwealth would be adversaries as to the indictments here attacked. Further, even if relator fails in his attack on the murder conviction, he may at some later date be considered for commutation of sentence or executive pardon, Penna. Const., art. IV, § 9, P.S., the result of which could possibly be affected by the outstanding indictments or a conviction thereunder. Since these possibilities [1] exist, this case presents a justiciable controversy. *See* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

[■] We therefore proceed to consider a similar but narrower issue: whether relator is "in custody" within the meaning of 28 U.S.C. § 2241(c) (3). The relevant custody, under the statute, is that imposed by the charges under attack, i. e., the custody which is allegedly lawless. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *See* Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1090, 1091 (1970) [hereinafter cited as "Developments—Federal Habeas Corpus"]. Hence, the precise issue we face is whether relator, when he filed his habeas corpus petition, was "in custody" under the indictments he attacks.[2]

---

1. We are aware of the fact that, in other jurisdictions, the pendency of indictments may affect the conditions of the sentence the prisoner is serving. *E. g.*, Smith v. Hooey, 393 U.S. 374, 378, n. 8, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). However, since relator has not argued, and our research has not disclosed, that this is the case in Pennsylvania, we shall assume that the pendency of the indictments does not affect the conditions of relator's life sentence.

2. It is well settled that this court has jurisdiction, under the habeas corpus statute, to review the legality of pre-conviction detention. Baker v. Grice, 169 U.S. 284, 290, 291, 18 S.Ct. 323, 42 L.Ed. 748 (1897); U. S. ex rel. Hill v. Hendricks, 321 F.Supp. 300 (E.D.Pa., filed Dec. 21, 1970); United States ex rel. Waldron v. Lennox, 244 F.Supp. 239 (E.D.Pa., 1965); Amsterdam, "Criminal Prosecution Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Ju-

■ Relator directs our attention to Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), where it was held that the petitioner, who was serving the first of two sentences to run consecutively, was "in custody" on the sentence he had yet to begin serving. The Court noted that the postponement of the adjudication of factual issues would lessen the probability that final disposition of the case would do substantial justice. 391 U.S. at 62, 88 S.Ct. 1549. Moreover, the Court considered that, if the petitioner were to prevail on the merits, to make him wait to petition for habeas corpus until he began service on the later sentence would extend "without practical justification" the time he would have to remain in confinement. 391 U.S. at 64, 88 S.Ct. 1549. Relator argues, and we agree, that these considerations also militate for review at this time in his case. Relator also argues that, in light of these policy considerations, the "in custody" requirement should be construed broadly enough to include this case. With this we cannot agree.

Relator, at the time he filed his habeas corpus petition, was serving only his life sentence: there has been no indication that he was being restrained at all in order to assure his appearance for trial on the indictments outstanding. Though it is true that, should relator be released on his present sentence, he might be held thereafter under the outstanding indictments, this would constitute a *future* restraint. *See* Nelson v. George, 399 U.S. 224, 229 n. 6, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970). *But see* Kane v. Virginia, 419 F.2d 1369, 1372 (C.A.4, 1970); *cf.* Word v. North Carolina, 406 F.2d 352, 355 (C.A.4, 1969). Similarly, though relator might at some time be convicted under the indictments and sentenced to a term to run concurrently with his life term, this would amount to a *future* restraint.

The outstanding charges may threaten relator and thus psychologically "restrain" him.[3] *See, e.g.,* Smith v. Hooey, 393 U.S. 374, 377, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969). *See generally* Developments—Federal Habeas Corpus at 1078. However, in order to find custody it must also be shown that this restraint is a substantial encroachment on relator's liberty. *See* Allen v. United States, 349 F.2d 362 (C.A.1, 1965) (bail while appeal pending not sufficiently restrictive); Matysek v. United States, 339 F.2d 389 (C.A.9, 1964) (same); Odell v. Haas, 280 F.Supp. 208 (W.D. Wis.,1968) (recognizance before trial not sufficiently restrictive); Developments—Federal Habeas Corpus at 1075 n. 6, 1076–1079; *cf.* Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). While no clear test for determining which restraints are substantial enough to constitute custody has arisen, we are of the opinion that, in light of the history of the writ, which we are obliged to look to, Jones v. Cunningham, 371 U.S. 236, 238, 239, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), this psychological restraint is insufficient to constitute custody. *See* Odell v. Haas, 280 F.Supp. 208 (W.D.Wis.,1968); *cf.* Allen v. United States, 349 F.2d 362 (C.A.1, 1965); Matysek v. United States, 339 F.2d 389 (C.A.9, 1964); Developments—Federal Habeas Corpus at 1075 n. 6.[4]

---

risdiction to Abort State Court Trial," 113 U.Pa.L.Rev. 793, 883 (1965).

3. While actual physical restraint under these indictments lies solely in the future, the threat of that restraint can have a psychological impact in the present. Thus, we have a present restraint, *i. e.,* one which existed at the time the petition was filed and which continues unabated.

4. Most cases which hold that bail constitutes custody, *e. g.,* Marden v. Purdy, 409 F.2d 784 (C.A.5, 1969); Foster v. Gilbert, 264 F.Supp. 209 (S.D.Fla., 1967), do not indicate otherwise. Rather, since they look to the restraints imposed as conditions of bail, they are consistent with the proposition that the psychological restraints mentioned in the text are insufficient to constitute "custody." *But see* Burris v. Ryan, 397 F.2d 553 (C.A.7, 1968).

■ Relator also argues that he is "in custody" under the indictments because those indictments, or a conviction thereunder, may make executive pardon or commutation of the life sentence less likely. It seems that potential effects of this sort on a sentence presently being served may constitute custody. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). However, considering both the substantiality of the potential restriction and the relative probability of its occurrence, we find this potential effect of the indictments insufficient to constitute custody.

Finally, if we consider the "totality of restraints" herein, we conclude that they are insufficient to constitute custody. To decide otherwise would in our mind involve "tenuously construing 'custody' virtually to read the word out of the statute." Allen v. United States, 349 F. 2d 362, 363 (C.A.1, 1965). This we are not prepared to do.