**In re VAN LAEKEN.**
**No. 36933.**

District Court, N. D. California, S. D.

Feb. 10, 1938.

———◆———

Gladstein, Grossman & Margolis, of San Francisco, Cal., for petitioner.

Stanley B. Johnston, United States Naturalization Examiner, of San Francisco, Cal., opposed.

ST. SURE, District Judge.

Petitioner, an alien seaman who has served on American vessels for more than three years, applies for citizenship. 8 U. S.C.A. § 388. He is a native of Belgium and a member of the Marine Cooks and Stewards Union.

The report of the naturalization examiner shows that, before the alien applied for his second papers, he requested Jean M. Huysmans, naturalized, and, like applicant, a native of Belgium, to be one of his witnesses. Huysmans had known applicant about nine years, part of which time he was a fellow unionist, and once was quite friendly with him. Huysmans declined to recommend applicant because he had said

to Huysmans "there was only one government which was good—Russia," and that Russia "was the only country in the world where things were good for everybody." Applicant also invited Jack L. Leppold, native born and a co-unionist, to be one of his witnesses. When Leppold appeared at the naturalization office and was questioned by the examiner, he declined to recommend applicant. "I told the examiner at that time," Leppold testified, "that I heard Van Laeken discussing political parties, and he always swayed toward communist doctrines, and he told me that the Russian government was the workers' government —the best government."

Applicant finally secured two witnesses and filed his petition. Several witnesses were examined, among them the two above mentioned, and Eugene Frederick Berg, secretary of the Marine Cooks and Stewards Union, and Max Watson, assistant secretary. The former knew of no reason why applicant should not be admitted, but the latter testified, "I believe that all those who know Mr. Van Laeken are agreed that his loyalty to the present government is not what it might be." He had heard applicant's loyalty to the government discussed, and testified, "It was a general summary of remarks over a period of time which led me to believe he was disloyal."

Applicant testified that he was not and never had been a Communist. He would have no difficulty in taking an oath to support and defend the Constitution of the United States. He believed in our form of government. He was opposed to Facism. Upon the question of Communism, however, he was evasive, as shown by the following: The examiner:

"Q. Mr. Van Laeken, as to this question of communism—are you in sympathy with the aims of the communist party? A. It is a difficult question to answer. Unless you explain the definition of communism and its principles as I am not acquainted with them.

"Q. Well, I can only explain it as it is, commonly known. It is commonly believed that the communists advocate the abolition of what is known as the capitalistic form of government in this country. A. You state that they advocate the abolition of the capitalistic system?

"Q. That is, the doing away with the capitalistic system in this country. A. That is the principle of communism? I don't understand the principles very clear-

ly. I couldn't give you a direct answer to that."

In another part of his examination he testified: "To my knowledge I have never heard that the communist party is considered a menace to anyone or the government. All I know is that it is a regular political party. I recall very well that it was in California on the ballot in the last national election."

In answer to questions by his attorney he testified:

"Q. There are fewer changes in the Soviet Union today than in 1917, are there not? A. There are fewer changes today in the Soviet Union than there were before the Russian revolution.

"Q. Do you know why? A. Yes. When people study religion from the historical point of view they are bound to get acquainted with the fact that it is only an institution to oppress the workers for the purpose of exploitation. This is not my own view but as I have learned it from several great liberal authorities to the Soviet government." This is reminiscent of Karl Marx's well-known aphorism, "Religion is the opium of the people," adopted by Lenin, and used as propaganda by Communists in proselytizing workers of the world.

The naturalization examiner is of the opinion that applicant has not made sufficient showing to warrant his admission to citizenship. The examiner is not satisfied "that the alien is at this time, or that he has been during the past five years, 'attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.'" 8 U.S.C.A. § 382. He recommends that the petition be denied.

The gift of American citizenship is not to be lightly conferred. "Because of the great value of the privileges conferred by naturalization, the statutes prescribing qualifications and governing procedure for admission are to be construed with definite purpose to favor and support the government. And, in order to safeguard against admission of those who are unworthy, or who for any reason fail to measure up to required standards, the law puts the burden upon every applicant to show by satisfactory evidence that he has the specified qualifications." United States v. Schwimmer, 279 U.S. 644, 649, 49 S.Ct. 448, 449, 73 L.Ed. 889; United States v.

Manzi, 276 U.S. 463, 467, 48 S.Ct. 328, 72 L.Ed. 654.

█ "In specifically requiring that the court shall be satisfied that the applicant, during his residence in the United States, has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, etc., it is obvious that Congress regarded the fact of good character and the fact of attachment to the principles of the Constitution as matters of the first importance. The applicant's behavior is significant to the extent that it tends to establish or negative these facts." United States v. Macintosh, 283 U.S. 605, 616, 51 S.Ct. 570, 572, 75 L. Ed. 1302.

██ "The expression 'well disposed' refers particularly to the mental attitude of the applicant, with intent to exclude from citizenship persons disbelieving in our form of government or hostile to it. Attached to the principles of the Constitution means attachment to the principles of free government as exemplified in that instrument. 'Attachment' is a stronger word than 'well disposed,' and implies a depth of conviction which would lead to an active support of the Constitution." In re Saralieff, D.C., 59 F.2d 436.

█ In these troublous times, when subversive forces are avowedly seeking destruction of world democracies, particular care should be exercised in the admission of aliens to citizenship. I think an applicant for citizenship should be above suspicion of a preference for another form of government than our own, or of mental reservations concerning the matter; that his mental attitude should disclose a sincere adherence to the political philosophy of our Constitution. The testimony of the alien here leaves the impression that he is not only not attached to the principles of the Constitution, but that he made his application for citizenship in the wrong country. "And when, upon a fair consideration of the evidence adduced upon an application for citizenship, doubt remains in the mind of the court as to any essential matter of fact, the United States is entitled to the benefit of such doubt and the application should be denied." United States v. Schwimmer, supra, 279 U.S. 644, at page 650, 49 S.Ct. 448, 450, 73 L.Ed. 889.

I am in accord with the recommendation of the naturalization examiner, and the petition will be denied.