**VAN LAEKEN v. WIXON et al.**
**No. 28807.**

United States District Court
N. D. California, S. D.

June 3, 1949.

See, also D.C. 81 F.Supp. 79.

Gladstein, Andersen, Resner & Sawyer and Lloyd E. McMurray, San Francisco, Cal., for plaintiff.

Frank J. Hennesy, United States Attorney, San Francisco, Cal., Edgar R. Bonsall,

Assistant United States Attorney, San Francisco, Cal., for defendants.

HARRIS, District Judge.

Plaintiff herein, Benoit Albert Van Laeken, has filed a complaint under date of April 22, 1949, seeking injunctive relief. An understanding of the factual background is necessary before legal principles may be applied, particularly as plaintiff has heretofore sought similar relief at the hands of Honorable Louis Goodman.[1]

The original complaint filed alleges, in brief: plaintiff, a citizen and national of Belgium, is within the jurisdiction of this Court; that since June 16, 1932, he has lawfully resided in the United States; for many years he has been a resident of the State of California. Plaintiff has been regularly employed as a merchant seaman, sailing in the steward's department of vessels owned and operated by United States companies, under the United States flag. Plaintiff has twice sought to be admitted to United States citizenship. On each occasion he has been denied naturalization on the ground that he was associated with members of the Communist party. On the first occasion, the petition came before the late Honorable A. F. St. Sure, reported in D.C. 22 F.Supp. 145[2]; he also appeared before Judge Frank T.

---

[1] Plaintiff, by petition for writ of habeas corpus, alleged practically all of the essential grounds herein set forth. Petition for writ was denied. D.C., 81 F. Supp. 79.

[2] Van Laeken appeared before the late Judge St. Sure in 1938. The Court went into the background of petitioner at considerable length, in the light of the Examiner's report. Excerpts from the Opinion are to some extent enlightening as to the background of petitioner. 22 F.Supp. at page 146:

"* * * Applicant finally secured two witnesses and filed his petition. Several witnesses were examined, among them the two above mentioned, and Eugene Frederick Berg, secretary of the Marine Cooks and Stewards Union, and Max Watson, assistant secretary. The former knew of no reason why applicant should not be admitted, but the latter testified, 'I believe that all those who know Mr. Van Laeken are agreed that his loyalty to the present government is not what it might be.' He had heard applicant's loyalty to the government discussed, and testified, 'It was a general summary of remarks over a period of time which led me to believe he was disloyal.'

"Applicant testified that he was not and never had been a Communist. He would have no difficulty in taking an oath to support and defend the Constitution of the United States. He believed in our form of government. He was opposed to Fascism. Upon the question of Communism, however, he was evasive, as shown by the following:

"The examiner:

"'Q. Mr. Van Laeken, as to this question of communism—are you in sympathy with the aims of the Communist party? A. It is a difficult question to answer. Unless you explain the definition of Communism and its principles as I am not acquainted with them.

"'Q. Well, I can only explain it as it is commonly known. It is commonly believed that the Communists advocate the abolition of what is known as the capitalistic form of government in this country. A. You state that they advocate the abolition of the capitalistic system?

"'Q. That is, the doing away with the capitalistic system in this country. A. That is the principle of communism? I don't understand the principles very clearly. I couldn't give you a direct answer to that.'

"In another part of his examination he testified: 'To my knowledge I have never heard that the communist party is considered a menace to anyone or the government. All I know is that it is a regular political party. I recall very well that it was in California on the ballot in the last national election.'

"In answer to questions by his attorney, he testified:

"'Q. There are fewer changes in the Soviet Union today than in 1917, are there not? A. There are fewer changes today in the Soviet Union than there were before the Russian revolution.

"'Q. Do you know why? A. Yes. When people study religion from the historical point of view they are bound to get acquainted with the fact that it is only an institution to oppress the workers for the purpose of exploitation. This is not my own view but as I have learned it from several great liberal authorities to the Soviet Government.' This is reminiscent of Karl Marx's well-known aphorism, 'Religion is the opium of the people,' adopted by Lenin, and used as propaganda by Communists in proselytizing workers of the world.

"The naturalization examiner is of the

Deasy of the Superior Court in the City of San Francisco, which State Court denied him relief, June 4, 1947.

It further appears that on or about July 2, 1947, plaintiff sailed from San Francisco as a member of the crew of the S.S. Augustin Daly. Before sailing, plaintiff signed articles as a crew member before a regularly appointed United States Shipping Commissioner. After a foreign voyage, he arrived at the Port of Galveston, Texas, on June 3, 1948. He was there detained aboard the vessel by the Immigration and Naturalization services at that port, and prevented from landing.

It is alleged that he was then informed the Attorney General of the United States had ordered his exclusion, and he was ordered to sail on another foreign voyage as a regular member of the crew.

He returned to the United States at the Port of New Orleans on July 22, 1948, as a crew member of the S.S. Augustin Daly. He was detained by United States authorities, first aboard the vessel, and later at Parish Prison, New Orleans. It appears he was detained under Presidential Proclamation No. 2523 of November 14, 1941, (8 C.F.R. 175.57)[3]

Thereafter, by order of the Attorney General, he was held for examination by a Board of Special Inquiry. At his own request, he was transferred to San Francisco, and since that date has been detained by the defendants.

---

opinion that applicant has not made sufficient showing to warrant his admission to citizenship. The examiner is not satisfied 'that the alien is at this time, or that he has been during the past five years, "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."' 8 U.S.C. A. § 382. He recommends that the petition be denied. * * *

"(6–8) In these troublous times, when subversive forces are avowedly seeking destruction of world democracies, particular care should be exercised in the admission of aliens to citizenship. I think an applicant for citizenship should be above suspicion of a preference for another form of government than our own, or of mental reservations concerning the matter; that his mental attitude should disclose a sincere adherence to the political philosophy of our Constitution. The testimony of the alien here leaves the impression that he is not only not attached to the principles of the Constitution, but that he made his application for citizenship in the wrong country. 'And when, upon a fair consideration of the evidence adduced upon an application for citizenship, doubt remains in the mind of the court as to any essential matter of fact, the United States is entitled to the benefit of such doubt and the application should be denied.' United States v. Schwimmer, supra, 279 U.S. 644, at page 650, 49 S.Ct. 448, 450, 73 L.Ed. 889."

3 "Any alien, even though in possession of a permit to enter, or exempted under Sec. 175.41 to 175.63, inclusive, from obtaining a permit to enter, may be excluded temporarily if at the time he applies for admission at a port of entry, it appears that he is or may be excludable under one of the categories set forth in Section 175.53. The official excluding the alien shall immediately report the facts to the head of his department, who will communicate such report to the Secretary of State. Any alien so temporarily excluded by an official of the Department of Justice shall not be admitted and shall be excluded and deported unless the Attorney General, after consultation with the Secretary of State, is satisfied that the admission of the alien would not be prejudicial to the interests of the United States. Any alien so temporarily excluded by any other official of the Department shall not be admitted, and shall be excluded and deported unless the Secretary of State is satisfied that the admission of the alien would not be prejudicial to the interests of the United States.

"(b) In the case of an alien temporarily excluded by an official of the Department of Justice on the ground that he is, or may be excludable under one or more of the categories set forth in Sec. 175.53, no hearing by a Board of Special Inquiry shall be held until after the case is reported to the Attorney General and such hearing is directed by the Attorney General or his representative. In any special case the alien may be denied a hearing before a Board of Special Inquiry and an appeal from the decision of that Board if the Attorney General determines that he is excludable under one of the categories set forth in Sec. 175.53 on the basis of the information of a confidential nature, the disclosure of which would be prejudicial to the public interest."

After the decision rendered by Judge Goodman, plaintiff filed in that action a motion that the Court relieve him from the Order denying plaintiff's plea for writ of habeas corpus[4], and requesting further hearing of the case. On January 4, 1948, the motion was denied.

Thereafter, as it appears, on February 8, 1949, plaintiff filed notice of appeal from the said order of January 4, 1949, denying him relief in the habeas corpus proceeding, and from the other and several orders made therein. Plaintiff sought to prosecute his appeal before the Court of Appeals of the Ninth Circuit. Thereafter, it is alleged plaintiff, by his attorneys, entered into an agreement with defendant Olson, who, as it appears, is chief of the Expulsion Section for the 13th United States Immigration District, to dismiss the appeal on the alleged condition that defendants proceed with all possible speed to conduct a hearing before a Board of Special Inquiry. It is further alleged that defendant Olson entered into a stipulation which was filed in the Court of Appeals, whereby request was made that the action be dismissed. By its order, the Court of Appeals did dismiss plaintiff's appeal.

Pursuant to the agreement, it is alleged plaintiff's case was set for hearing before a Board of Special Inquiry on Friday, April 8, 1949. The day before the hearing, plaintiff was notified by defendants, including defendant Olson, that no hearing before a Board of Special Inquiry or any other Board would be held until further orders from Washington.

On the 21st day of April, 1949, plaintiff was informed by defendant Olson that defendants intended to exclude and deport plaintiff from the United States forthwith, without any hearing whatever. Under these circumstances, plaintiff commenced his present action before this Court, seeking to enjoin the above mentioned Immigration and Naturalization officials from deporting him from the United States.

It is plaintiff's position that he may not be excluded nor deported, except after an adjudication in accordance with statutory requirements, including the opportunity for a hearing before a Board of Special Inquiry. Plaintiff contends that the summary action threatened is contrary to due process of law which must be accorded to him as a resident alien of the United States, and contrary to the 5th Amendment to the Constitution.

Plaintiff further contends that he is clothed with certain other constitutional rights and privileges as a lawfully admitted alien in permanent residence in the United States. Among these are the right to freedom of speech, thought and assembly, all of which rights are threatened by defendants' exclusion and deportation order.

By way of relief, plaintiff asks this Court to restrain the defendants from acting until he is afforded a hearing before a Board of Special Inquiry, in accordance with the provisions of 8 U.S.C.A. §§ 152 and 153.

In anticipation of one of defendant's grounds for a motion to dismiss the complaint, namely failure to exhaust his remedy of habeas corpus, plaintiff has set forth in an amended complaint a third and alternative cause of action against defendants, by way of a plea for relief through the writ of habeas corpus. The allegations set forth in the third cause of action are similar to those relied upon above. The relief prayed for is that the writ of habeas corpus be issued, commanding defendants to produce plaintiff before this Court, and to discharge him from detention and imprisonment, which is alleged to be unlawful because of plaintiff's deprivation of his rights to a hearing, as provided for in 8 U.S.C.A. §§ 152 and 153, as set forth above.

Defendants have filed herein a motion to dismiss the original complaint, as well as the first amended complaint embracing three counts. The grounds and substance are as follows:

(a) That plaintiff is not entitled to the injunctive relief as prayed in the complaint for the reason that he has a full, complete and adequate remedy at law by habeas corpus.

(b) That plaintiff is not entitled to a judicial review of the action of officials of

---

[4] The Court also denied plaintiff's motion for release on bail, pending a determination on the merits.

the United States Immigration and Naturalization Service under 5 U.S.C.A. § 1009, Section 10, Administrative Procedure Act.

(c) That injunction is not ordinarily the method of restraining the performance of an administrative action, and it is not proper in the instant case.

(d) That in view of the nature of the relief sought by plaintiff in his complaint, he fails to name the proper defendants, having omitted therefrom the name of the Attorney General of the United States upon whose order the plaintiff is to be excluded and deported.

(e) That ample authority exists for the Attorney General of the United States to exclude and deport the plaintiff under 22 U.S.C.A. § 223, as amended, and Proclamation of the President No. 2523, 55 Stat. 1696, dated November 14, 1941, and Sections 175.53 and 175.57 of Title 8 of the Code of Federal Regulations, providing that certain aliens can be excluded from the United States without a hearing of any kind. The plaintiff was properly ordered excluded and deported from the United States by the Order of the Attorney General dated April 21, 1949.

With respect to the inclusion of the court grounded on habeas corpus, as a third and additional ground, defendants assert that for technical reasons the cause should be dismissed; that is to say that the petition for the writ may not be joined with the other counts seeking injunctive relief.

In addition, defendants contest plaintiff's factual showing by filing herein an affidavit on the part of Mr. Stan Olson, who in effect denies that he ever agreed with plaintiff that in consideration of the dismissal of the appeal, that the Board of Special Inquiry would conduct a hearing.[5]

The reason for the changed position on the part of the defendants with respect to according petitioner a hearing is more particularly set forth in the exhibit annexed to the Affidavit of I. F. Wixon, as District Director of the Thirteenth United States Immigration and Naturalization District at San Francisco, California; the part which is pertinent being as follows:

"Discussion: This case last considered on August 6, 1948, at which time an order was entered directing that the alien's admissibility to the United States be determined by a Board of Special Inquiry. The facts concerning the subject alien's entries into the United States and his prior immigration and naturalization record are fully set forth in the order of August 6, 1948.

*"For the reasons set forth in the order of the assistant Commissioner, Enforcement Division, dated April 7, 1949, it now appears that the alien's inadmissibility to the United States is based on information of a confidential nature, the disclosure of which would be prejudicial to the public interest.* The Secretary of State has entered an order in accordance with the authority contained in the Act of May 22, 1918, as amended by the Act of June 21, 1941, and Presidential Proclamation No. 2523 of November 14, 1941, declaring that the subject alien's entry into the United States would be prejudicial to the interests of the United States. Accordingly, under the authority of 8 C.F.R. 175.57(b) it is determined that

---

[5] The pertinent part of Olson's affidavit which would tend to point the factual issue is as follows:

"Prior to the dismissal of the appeal in action No. 28339-R, the attorney for plaintiff herein, Lloyd E. McMurray, contacted your affiant by telephone, stating that they were going to dismiss the appeal in the Circuit Court, and inquiring as to whether the United States Immigration and Naturalization Service would thereafter grant the plaintiff a prompt hearing before a Board of Special Inquiry. Mr. McMurray was informed that upon receipt by the Immigration and Naturalization Service of a certified copy of the mandate of the Circuit Court of Appeals, a date for a hearing would be set. Immediately upon receipt of the mandate, the case was set for hearing on or about April 8, 1949, and it was the intention of the Immigration and Naturalization Service to afford such a hearing.

"However, on April 7, 1949, your affiant received instructions from the Commissioner of Immigration and Naturalization at Washington, D. C., stating that no hearing should be held before a Board of Special Inquiry until receipt of further information.

"At no time did affiant solicit the dismissal of plaintiff's appeal."

the subject alien be denied a hearing before a Board of Special Inquiry and his temporary exclusion be made permanent. The order dated August 6, 1948, is hereby withdrawn.

"Recommendation: It is recommended that the order of this Service dated August 6, 1948, be withdrawn.

"It is further recommended that the alien be denied a hearing before a Board of Special Inquiry.

"It is further recommended that the alien's temporary exclusion from the United States be made permanent." (Italics ours.)

The foregoing summary should suffice to pose the basic legal question which plaintiff has sought to present in his complaint, that is, whether the entry at New Orleans on or about July 22, 1948, by Van Laeken, as a seaman aboard the S.S. Augustin Daly, of American registry, may be regarded by the Attorney General of the United States as a basis for the invocation of his authority under 8 C.F.R., Section 175.57, to exclude and deport plaintiff without a hearing of any kind, albeit Van Laeken, as alleged, is and was for some years prior thereto a resident alien within the United States of America.

Plaintiff's counsel contends that the primary problem, back-grounded as it is by the factual considerations, is one of first impression. I cannot view it as such. For all practical purposes, Judge Louis Goodman disposed of the fundamental question involved. I feel bound by his determination. He held that "The authorities, however, fully sustain the right of the Immigration Authorities to treat his (Van Laeken's) return on a vessel from abroad to these shores, as an entry. United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; [United States ex rel.] Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L. Ed. 1298; United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758." 81 F.Supp. 79, 80.

Counsel for plaintiff strenuously disputes this ruling in the instant proceeding, and with some persuasion contends that plaintiff's occupation is of such nature that he is compelled by force of his employment to make cruises from time to time as a seaman to a foreign port, and this accidental circumstance should not be considered as permitting the application of the rule on reentry, which Judge Goodman, on the same record, considered applicable and fundamental.

■ This Court is mindful of the practice in Federal Courts that a Judge should not reconsider matters of record that have been ruled upon by a Judge of coordinate jurisdiction in the same case. The wisdom and soundness of this rule cannot be questioned. Salvant v. Louisville & N. R. Co., D.C., 83 F.Supp. 391, 395.

Counsel for the plaintiff concedes that in a number of judicial decisions a resident alien who follows the sea makes a new entry into the United States each time he returns from a foreign port. Counsel, however, after this concession, blandly asserts that "no rights or privileges depend upon the question of whether there has been an entry." [6]

■ With this premise established, the interplay of the added legal principles is at once apparent. The Attorney General was and is acting under the War Powers. (See footnote 3). Such powers, of course, may be abused, but is that a reason under the statute involved for invoking the jurisdiction of this Court to exercise a supervisory capacity over the prerogatives of the Attorney General as vested under statutory enactment? I believe not.

In Ludecke v. Watkins, 335 U.S. 160, 172, 68 S.Ct. 1429, 1435, 92 L.Ed 1881, Justice Frankfurter, speaking for the Court, said:

"Such great war powers may be abused, no doubt, but that is a bad reason for having judges supervise their exercise, whatever the legal formulas within which such supervision would nominally be confined. In relation to the distribution of constitutional powers among the three branches of the Government, the optimistic Eighteenth Century language of Mr. Justice Iredell, speaking of this very Act, is still pertinent:

---

[6] Compare opinion by Mr. Justice Douglas in Delgadillo v. Carmichael, 332 U.S. 388, at page 390, 68 S.Ct. 10, at page 11, 92 L.Ed. 17.

964

" 'All systems of government suppose they are to be administered by men of common sense and common honesty. In our country, as all ultimately depends on the voice of the people, they have it in their power, and it is to be presumed they generally will choose men of this description; but if they will not, the case, to be sure, is without remedy. If they choose fools, they will have foolish laws. If they choose knaves, they will have knavish ones. But this can never be the case until they are generally fools or knaves themselves, which, thank God, is not likely ever to become the character of the American people.' (Case of Fries, supra, 9 Fed.Cas. at page 836, No. 5, 126.)" CF. United States ex rel. Knauff v. Watkins, 2 Cir., 173 F.2d 599.

The Court has concluded that the complaint, and each count thereof, is barren of facts sufficient to justify judicial intrusion upon the prerogatives of the Attorney General of the United States in this particular cause. If the powers be too broad, that is a matter for Congressional concern and appropriate amendment.[7] Accordingly, the motion to dismiss is granted.

It would be an idle and futile legal gesture for this Court to issue any process under the third count requesting the issuance of the writ of habeas corpus, for the reason that the return would show no more nor less than that already exemplified by the record now before the Court, showing cause for plaintiff's detention.

Defendants invoke the technical position that the Attorney General has not been joined. The Attorney General should have been joined. Gan Seow Tung v. Carusi et al., D.C.S.D.Cal., 83 F.Supp. 480. However, we pass this point since it is that character of omission which can be corrected by an amended pleading. The fundamental issue transcends technical refinement.

Plaintiff contends that Section 10 of the Administrative Procedure Act authorizes review by this Court, 5 U.S.C.A. § 1009. This question need not be decided herein, for even if this review is permissible in a proper case, the complaint does not state such a case.

During the pendency of the proceedings, plaintiff applied for his release on bail. The record reflects that a similar request was made of Judge Louis Goodman in the prior proceeding. The application was denied.

The formal record herein will show that, similarly, the motion for release on bail herein is denied.[8]

---

[7] Ludecke v. Watkins, 335 U.S., 160, 173, 68 S.Ct. 1429, 92 L.Ed. 1881.

[8] Ex parte Fong Chow Oi, D.C., 15 F.

2d 209; United States ex rel. Carapa v. Curran, 297 F. 946, 36 A.L.R. 877, 887; Lee Fong Fook, D.C., 74 F.Supp. 68, 72.