**UNITED STATES v. BRIDGES et al.**

No. 32117.

United States District Court
N. D. California, S. D.

Oct. 12, 1949.

Frank J. Hennessey, U. S. Attorney, San Francisco, Cal., R. B. McMillan, Deputy U. S. Attorney, San Francisco, Cal., F. Joseph Donohue, Special Ass't to Attorney General, John P. Boyd, Jr., Special Ass't to Attorney General, George R. Gallagher, Special Attorney, Dep't of Justice, attorneys for plaintiff.

Gladstein, Andersen, Resner & Sawyer, by Herbert Resner, Norman Leonard, George Andersen, San Francisco, Cal., Irvin Goodman, Portland, Or., James Lawrence Fly, New York City, attorneys for defendants.

HARRIS, District Judge.

An indictment was found and returned against defendants Harry Renton Bridges, Henry Schmidt, and J. R. Robertson. The several counts, embraced in the indictment, are as follows, to wit:

924

"FIRST COUNT: (18 U.S.C., Section 88; Now 18 U.S.C. Section 371 [18 U.S. C.A. § 371])......on or about the 23rd day of June, 1945, and continuing thereafter until on or about October 1, 1945, and for some time prior thereto, the exact time being to the Grand Jury unknown, at the City and County of San Francisco, State of California, within said Division and District, did conspire with each other, and with divers other persons to the Grand Jury unknown, to defraud the United States by impairing, obstructing and defeating the proper administration of its naturalization laws, in the manner following, to wit: By having said defendant Harry Renton Bridges fraudulently petition for and obtain naturalization in a naturalization proceeding in the Superior Court of the State of California, in and for the City and County of San Francisco, by falsely and fraudulently stating and representing to the said Court in said proceeding numbered 28152 in the records of said Superior Court, that he, said defendant Harry Renton Bridges, had never belonged to the Communist Party in the United States; that said statement and representation so agreed to be made, and made, as aforesaid, as said defendants, and each of them at all times herein mentioned well knew, were false and fraudulent in this, that said defendant Harry Renton Bridges had in truth and in fact belonged to and been a member of the Communist Party in the United States from the year 1933 up to and including said 17th day of September, 1945; that said statement and representation were material to said naturalization proceeding.

"That in pursuance of such conspiracy, and during the existence thereof, and in furtherance, and to effect the objects thereof, said defendants, respectively, did and performed the following overt acts:

"1. On the 23rd day of June, 1945, defendant Harry Renton Bridges filed at the office of the Immigration and Naturalization Service, in the City of San Francisco, State of California, an application for a Certificate of Arrival and preliminary form for petition for naturalization.

"2. On or about the 8th day of August, 1945, said defendant Harry Renton Bridges appeared before Lloyd H. Garner, a Naturalization Examiner of the United States, at San Francisco, State of California, in the office of the County Clerk in and for the City and County of San Francisco, and gave testimony in the matter of the application of said defendant Harry Renton Bridges for naturalization.

"3. On or about the 8th day of August, 1945, said defendants Henry Schmidt and J. R. Robertson, and each of them, at the office of the County Clerk in and for the City and County of San Francisco, State of California, signed as witnesses a petition for naturalization in the case of defendant Harry Renton Bridges.

"4. On or about the 17th day of September, 1945, said defendants Harry Renton Bridges, Henry Schmidt, and J. R. Robertson, and each of them, appeared in the Superior Court of the State of California, in and for the City and County of San Francisco, and gave testimony in support of the petition of defendant Harry Renton Bridges for naturalization.

"SECOND COUNT: (8 U.S.C. Section 746(1), now 18 U.S.C. Section 1015(1) [18 U.S.C.A. § 1015(a)])......on the 17th day of September, 1945, at the City and County of San Francisco, State of California, in the Superior Court of the State of California, in and for the City and County of San Francisco, Honorable Thomas M. Foley, Superior Judge, presiding, there came on for hearing a naturalization proceeding, numbered 28152 in the records of said Superior Court, on the petition of defendant Harry Renton Bridges for naturalization under the Nationality Act of October 14, 1940; that defendant Harry Renton Bridges then and there was called and produced as a witness in said proceeding then on for hearing, and took an oath before said Court that he, the said defendant, would testify truly in said proceeding, and said Court then and there had competent authority to administer said oath, and did administer it; that defendant Harry Renton Bridges did then and there wilfully and knowingly make a false statement under oath in certain matters

which were material to the issues of said proceeding then and there being heard, giving the following answers to questions asked, to-wit:

"Q. Do you now, or have you ever, belonged to the Communist Party in the United States? A. I have not; I do not."

"That said answers so stated and testified to by defendant Harry Renton Bridges were, and each of them was, as said defendant then and there knew, wilfully false and contrary to his said oath, and said defendant did not then and there believe said answers, or any of them, to be true, and the said answers were, and each of them was, then and there believed and known by him to be false.

"That in truth and in fact said defendant at the time of so testifying belonged to and was a member of the Communist Party in the United States, and had belonged to and been a member of said Communist Party in the United States from 1933 up to and including said 17th day of September, 1945.

"That said statement and testimony of said defendant, and said answers given by him as aforesaid, were upon a material matter, and were material in and to the issues of said proceeding.

"*THIRD COUNT:* (8 U.S.C. Section 746(a) (5) [18 U.S.C.A. § 1425]) ...... that said defendants, Henry Schmidt and J. R. Robertson, on or about the 17th day of September, 1945, at the City and County of San Francisco, State of California, within said Division and District, did wilfully and knowingly encourage, aid, advise and assist a person, to-wit, Harry Renton Bridges, not then and there entitled thereto, to obtain, accept and receive a Certificate of Naturalization, which was to be procured, and was procured by fraud, as said defendants, and each of them, at all times herein mentioned well knew, said fraud consisting of false and fraudulent statements and representations made in a naturalization proceeding before the Superior Court of the State of California in and for the City and County of San Francisco, numbered 28152 in the records of said Superior Court, that said Harry Renton Bridges did not belong to the Communist Party in the United States and had never belonged to the Communist Party in the United States, whereas in truth and in fact said Harry Renton Bridges then and there, as said defendants Henry Schmidt and J. R. Robertson, and each of them, then and there well knew, belonged to and was a member of the Communist Party in the United States, and had belonged to and was a member of the Communist Party in the United States, and had belonged to and been a member of said Communist Party in the United States from 1933 up to and including said 17th day of September, 1945."

A series of Motions to Dismiss were filed herein by the defendants. These Motions are, in the main, identical as to each defendant, save and except as to the defendant Harry Bridges; he raises the additional grounds that the instant prosecution is barred by reason of the application of the doctrines of res adjudicata and double jeopardy. In this respect he asserts that the indictment, and the whole of the prosecution, must fall as a result of asserted constitutional infirmities. The Court will take up hereafter the several grounds of the motions.

Elaborate briefs have been presented in association with extended oral argument and the Court is now fully advised.

The principal objection presented is that the Statute of Limitations has barred the prosecution. This objection applies to all defendants.

Defendants have also moved for a Bill of Particulars and also for Discovery. By stipulation of counsel these several matters are to be heard at a later date and the Court reserves ruling on said motions.

(1) *The asserted bar of the Statute of Limitations:* Defendants' Motion to Dismiss the indictment, based upon the operation of the Statute of Limitations, Title 18 U.S.C.A. § 3282, is without merit. The first count of the indictment alleges a violation of the general conspiracy statute, 18 U.S.C.A. § 371, formerly Section 88. The date of the offense alleged is "on or about the 23rd day of June 1945, and continuing thereafter until on or abut October 1, 1945".

■ The plaintiff concedes that more than three years have elapsed prior to bringing the indictment (approximately three years and seven months); but plaintiff contends that the Wartime Suspension of Limitations Act has intervened and tolled the operation of the statute. See Section 590a, Title 18, U.S.C.A., now Section 3287[1].

This interpretation of the statute is based upon the clear, concise, and realistic holding of Judge Learned Hand in U. S. v. Gottfried, 2 Cir., 165 F.2d 360, at page 368, certiorari denied 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139, petition for re-hearing denied 333 U.S. 883, 68 S.Ct. 910, 92 L.Ed. 1157:

"* * * The argument—drawn from the Congressional debates—is that (the statutory) language should be confined to frauds of those who contracted with the United States * * * and that it does not include interference even though fraudulent which results in no pecuniary loss. Textually this reasoning has nothing to commend it, except so far as the word 'fraud,' may imply pecuniary loss; and, whatever might be said as a new matter for so circumscribing that word, it has been the law, at least since 1910, that in the statute under which this indictment was drawn, 'fraud' includes any conduct, 'calculated to obstruct or impair its' (the United States') 'efficiency and destroy the value of its operations and reports.' We see no reason for reading the words, 'defrauding the United States' in the statute of limitations now in question less comprehensively; certainly there was not enough ground for that in the debates of Congress. Besides, the purpose of the amendment was not to let crimes pass unpunished which had been committed in the hurly-burly of war,

an overriding motive which perfectly fits the situation at bar."

Counts two and three of the indictment charge violations of Sections 746(a) (1) and 746(a) (5) of Title 8, 18 U.S.C.A. §§ 1015(a), 1425. These alleged violations arose under the Nationality Act. The period of limitations in Title 8, Section 746(g) provided for a period of five years before prosecutions were barred.

The Government contends that the general saving provision contained in Section 21, Title 18, Act of June 25, 1948, 62 Stat. 862, is applicable to preserve this five-year limitation period, in addition to the extension afforded by the Wartime Suspension of Limitations Act. Section 21 reads as follows:

"The sections or parts thereof of the Revised Statutes or Statutes at Large enumerated in the following schedule are hereby repealed. Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal."

Defendants assert that the general three-year period, as provided in Section 3282, Title 18, has de-limited the five-year period and that, therefore, both of these counts are likewise barred by the statute. Defendants contend that Section 3282 is retrospective in effect. This contention is untenable. I have concluded that the general saving provision, supra, continues the "rights and liabilities" theretofore existing under the Sections of the Nationality Act upon which the instant prosecution is grounded.

We are confronted here with an extremely broad provision which seeks to preserve *"rights and liabilities"* of the parties. Advisedly, the saving clause sought to encompass within its scope the preservation of

1. "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, per-

formance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress. * * *"

all such rights and liabilities which were in existence at the effective date of the enactment, September 1, 1948. It is reasonable to conclude that Section 21 carried with it and preserved not only the criminal liability for the perpetration of the offenses charged in Title 8 but likewise kept alive the applicable five-year Statute of Limitations under which the government might prosecute the offenders. If defendants' contention were correct then we would be confronted with the anomalous situation of keeping alive a right, while at the same time failing to preserve the remedy afforded by the applicable Statute of Limitations.

■ The said provision preserves the status quo of all *rights and liabilities*. This applies equally to the Government as well to the Defendants and, accordingly, I have concluded that the five-year period of limitations applies to the offenses theretofore arising under the Nationality Act, more particularly embraced in counts two and three of the indictment.

The Government also advances the contention that the general saving clause, as embraced in Section 109, Title 1, is applicable to all three of the counts. It is unnecessary to pass upon this contention for, as the Court has concluded, the Statute of Limitations has been tolled as a result of the application of the Wartime Suspension of Limitations Act as well as Section 21, supra.

■ The Government contends that the Wartime Suspension of Limitations Act is equally applicable to all three counts on the general theory that fraud is implicit in each count. Reliance is placed upon Knauer v. U. S., 328 U.S. 654,[1a] 672, 673, 66 S.Ct 1304, 90 L.Ed. 1504; U. S. v. Ness, 245 U.S., 319, 324, 38 S.Ct. 118, 62 L.Ed. 321. This contention is no doubt sound for when we examine the statute in question, subdivision one, footnote 1, supra, it is manifest that the language used is broad, sweeping and all-inclusive as to fraud in a generic

sense, perpetrated "in any manner, whether by conspiracy or not".

Defendants' contention that the fraud contemplated must involve transactions involving pecuniary loss to the Government or having to do with government wartime contracts is not borne out by even a casual examination of the Suspension Statute. It is abundantly clear that subsection 1 must be interpreted as involving the specific type of fraud that is involved as a result of false swearing under the Nationality Act. Note, that the fraud may be perpetrated "in any manner" and is not limited to the area as contended for under the case of Marzani v. U. S., 83 U.S.App.D.C. 78, 168 F.2d 133.[1b] Cf. U. S. v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; U. S. v. Agnew, D.C., 6 F.R.D. 566, 568; U. S. v. Curley, C.C., 122 F. 738.

Mr. Chief Justice Hughes in U. S. v. Gilliland, supra, 312 U.S. at page 93, 61 S. Ct. at page 522, 85 L.Ed. 598, said in speaking of the type of fraud with which we are dealing:

"* * * The statute (false claims) was made to embrace false and fraudulent statements or representations where these were knowingly and willfully used in documents or affidavits 'in any matter within the jurisdiction of any department or agency of the United States'. In this, there was no restriction to cases involving *pecuniary or property loss to the government.* The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. *We see no reason why this apparent intention should be frustrated by construction.*" (Italics ours.)

Accordingly, the Motions of defendants to Dismiss the indictment grounded upon the assertion that the Statute of Limitations has barred each and every count con-

---

**1a.** "Fraud connotes perjury, falsification, concealment, misrepresentation." 328 U. S. at page 657, 66 S.Ct. at page 1306.

**1b.** Affirmed by divided Ct., 335 U.S. 895, 69 S.Ct. 299. See Hertz v. Woodman, 218 U.S. 205, 213, 214, 30 S.Ct. 621, 54 L.Ed. 1001. See recent expression in Heald v. U. S., 10 Cir., 1949, 175 F.2d 878, 880.

928

tained in the indictment are, and each of them is, Denied.

*(2) Jeopardy, Former Acquittal, and Res Adjudicata*

The defendant, Bridges, invokes the doctrines of double jeopardy, former acquittal etc., as a basis for the dismissal of the indictment.

Defendant Bridges says, "But this is not a simple prosecution. This case has become a *cause celebre,* taking its place in history with the prosecution of Peter Zenger, the Witchcraft Crimes of the early Colonial days, the Alien and Sedition prosecutions of the post-period of World War I, and prosecutions of the Haymarket Riot, Tom Mooney, and Sacco and Vanzetti".

It is contended that the institution of this criminal prosecution places Harry Bridges in jeopardy because "he has heretofore been so subjected to jeopardy on four prior, separate and distinct occasions, contrary and in violation of the provisions of the Fifth Amendment". This contention, of historic and atmospheric background, does not provide a legal basis for the dismissal of the indictment.

■■ It appears affirmatively from the record that defendant Bridges has never been subjected to criminal prosecution under the statutes which form the basis for the present indictment, nor has he ever been subjected to criminal prosecution by the United States Government, prior to the bringing or institution of the within prosecution. There has been no double jeopardy within the meaning of the said Amendment to the Constitution of the United States. Defendant concedes that the earlier proceedings against him were not "technically criminal prosecutions", but argues that, because the result of the earlier civil proceedings, such as the deportations hearings, might have ended in a more severe penalty, than a criminal penalty, that the civil proceedings should be considered criminal in nature and extent. The Court has not been referred to any rule or principle of law or reason which would support this novel contention. Counsel for defendant, however, with great force seeks to have this Trial Court depart from well-known prin-

ciples and launch upon some heroic venture and, at this state of the proceeding strike the criminal indictment down and render ineffectual the efforts of the Government in the prosecution of what the Government regards as felonious conduct upon the part of the defendant Bridges. If more compelling reasons were present than may appear in the case at Bar, this Court, under accepted and well-recognized rules, is foreclosed from deciding the case at this stage upon constitutional grounds. See Baker v. Grice, 169 U.S. 284, 292, 18 S.Ct. 323, 42 L.Ed. 748; Arkansas Fuel Oil Co. v. Louisiana, 304 U.S. 197, 202, 58 S.Ct. 832, 82 L.Ed. 1287.

■ Suffice, in disposing of this branch of the defendant's arguments to say:

(a) Defendant Bridges has never been the subject of criminal prosecution under any statute arising out of the facts and circumstances present in the case at bar.

(b) The "double jeopardy" provision of the Constitution requires that there be a second prosecution for the same offense.

(c) No Court of the United States, so far as I know, has ever held that a prior civil action or proceeding may be considered a criminal prosecution for the purpose of invoking this provision of the Fifth Amendment to the Constitution.

See Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917.

*(3) Due Process of Law:*

■ The instant ground urged by the defendant Bridges as well as the other two defendants is that of the Due Process Clause. He says in this connection that under the indictment he is deprived of his life, liberty and property without Due Process in that the instant proceeding, criminal in nature, is the fifth of a series of such proceedings. This contention on Mr. Bridges' part is based upon the erroneous predicate that the prior proceedings were criminal in their nature. As to the defendants Robertson and Schmidt, the contention is devoid of any merit and, accordingly, the several Motions based upon this ground are, and each of them is, Denied.

*(4) Estoppel:*

█ The defendants assert that the doctrine of Estoppel might be invoked against the Government in this criminal case. It is contended, in effect, that the Government had in its possession knowledge of the defendants' activities at the time of the naturalization proceeding and entered no objection at that time. It is further contended that the Government is, therefore, foreclosed from prosecuting a violation of a criminal law which grew out of proceedings in naturalization.

This contention is, in the light of the record, novel. However novel it may be, it is without merit. Accordingly, the several Motions based upon this ground are Denied.

(5) *Reliance on Statements Made by Defendant:*

The next ground for dismissal is that the Government of the United States did not rely on the statements made by the defendant Bridges in the naturalization proceedings.

█ This is not a matter which effects the sufficiency of the indictment and cannot serve as a basis for the dismissal. See U. S. v. Eisler, D.C. 75 F.Supp. 634, 638. The question of relevancy is not open to one who, as alleged, knowingly makes false statements with the intent to mislead the officials of the Government.

This ground is asserted by all of the defendants and, accordingly, the several motions are, and each of them is, Denied.

(6) *Equal Protection of the Law:*

This ground is based upon the assertion "the defendant Bridges alone of all persons in the country has been singled out and prosecuted on five separate and distinct occasions for the same alleged offense".

This assertion is, as already indicated, without merit and does not comport with the facts. It affirmatively appears in the record that Harry Bridges has not been prosecuted on five separate occasions for the same offense. The Motion, therefore, of the defendant Bridges in this respect is Denied.

(7) *Bad Faith*

█ In this connection all the defendants have moved to dismiss upon the ground of Bad Faith in the prosecution, alleging that, among other acts, the prosecution presented illegal evidence to the Grand Jury. They refer to this Court's opinion in International Longshoremen's & Warehousemen's Union v. Ackerman, D.C. 82 F.Supp. 65. This decision is unavailing. See U. S. v. McGuire, 2 Cir., 64 F.2d 485, 492; Kastel v. U. S., 2 Cir., 23 F.2d 156, 158. There is no evidence before this Court that the Government, through and by its agencies, acted in Bad Faith in connection with the criminal proceedings more recently instituted. This is pure assumption at this stage of the proceedings and is immaterial. Ordinarily, the motive of the prosecutor is immaterial. Cf. Laughlin v. Garnett, 78 U.S.App.D.C. 194, 138 F.2d 931; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838.

The Motions to dismiss on the ground of Bad Faith are and each of them is, Denied.

In addition to the foregoing grounds, defendants assert, in support of Motions to Dismiss, the asserted misconduct of the prosecution; alleged illegally obtained and incompetent evidence; allegedly unauthorized persons in the jury room.

█ The Court has painstakingly examined the record, and there is no basis in fact or in law for the said grounds and the assertion thereof. The several motions, therefore, based upon said grounds are, and each of them is, Denied. In this connection it might be said in passing that the attack made by the defendants in this respect is somewhat reminiscent of that urged in U. S. v. Foster, D.C., 80 F.Supp. 479, 482.

(8) *Failure to State Offense*

The next ground worthy of comment is the asserted failure of the indictment to state an offense. The Government contends in this connection that the indictment complies with the provisions of said Criminal Rules (7) (c), 18 U.S.C.A., in that each count embraced in the indictment represents a clear and concise statement containing all the essential elements of the offense.

The defendants' Motions are based on the following:

(a) That the indictment does not state sufficient facts to constitute an offense.

(b) That it does not appear from the indictment how the alleged false statements did or could have defrauded the Government of the United States.

(c) That it does not appear in the indictment how or in what manner the alleged false statements would or could be material to the naturalization proceedings.

(d) That it does not appear in the indictment in what manner the Government relied on the false statements.

(e) That the allegations concerning the date of the offense are not clear.

These several grounds are without merit.

The indictment, as drawn, complies in the fullest extent with the revised Rules of Criminal Pleading. The pronouncements of the Court of Appeals for this Circuit have been fully met and complied with. See Rose v. U. S., 9 Cir., 149 F.2d 755; Tatum v. U. S., 71 App.D.C. 393, 110 F.2d 555; Sutton v. U. S., 5 Cir., 157 F.2d 661. The statutes upon which the counts of the indictment have been predicated are neither vague nor are they general in their terms. The authorities are uniform and in agreement that, where the statute violated is clear upon its face and the elements are named, then an indictment which follows the language of the statute is not insufficient.

The Court has concluded that the test, as indicated in Haggner v. U. S., 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861, has been met and complied with and that the charges are sufficiently definite that it will afford the protection of the constitutional prohibition of jeopardy in the event of a subsequent proceeding growing out of the same facts.

With respect to the assertion that the indictment does not show how the alleged false statements defrauded the United States:

If the defendant Bridges' answer to the question of whether he was a member of the Communist Party was, as alleged, a false statement which was given to an agency of the United States Government in a naturalization proceeding, then his answer constituted fraud. Cf. U. S. v. Curley, 1 Cir., 130 F. 1, 8; Haas v. Henkel, 216 U.S. 462, 479, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; U. S. v. Goldsmith, 2 Cir., 108 F.2d 917. See Eisler v. U. S., D.C.Cir., 176 F.2d 21, 24, wherein the Court said:

"* * * It is common knowledge that the Communist Party, in whatever country it exists, is under the authority and control of the Party heads in the Soviet Union. Even the name of the organization known as 'Communist International' indicates it is the overlord of Communists everywhere."

Defendants lay particular stress upon the ground that it allegedly does not appear how the false statements "were or could be material to the naturalization proceedings referred to therein".[2] The Section in question, upon which the prosecution is in particular grounded, Section 1015(a), Title 18, U.S.C.A., makes no reference to "materiality". It provides:

"* * * Whoever knowingly makes any false statement under oath in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens * * *" shall be punished according to law.

In Prevost v. U. S., 9 Cir., 149 F.2d 747, 748, the Court said in part:

"* * * Appellant contends that counts 1 and 2 were defective in failing to show how and in what manner, if at all, the representations mentioned therein were material. * * * The sub-sections of which counts 1 and 2 charged violations say nothing about materiality. The motion was properly denied."

2. Defendant Bridges contends that the question propounded to him concerning his asserted Communist affiliation was irrelevant. This Court has held to the contrary. See Van Laeken v. Wixon, D. C., 84 F.Supp. 958. Cf. opinion of late Judge A. F. St. Sure, In re Van Laeken, D.C., 22 F.Supp. 145.

However, the question of relevancy is not open to one who knowingly makes false statements with intent to mislead officials of the Government. See U. S. v. Eisler, supra; Kay v. U. S., 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607.

The defendants, not only in their oral arguments before the Court, but also in the moving papers, have repeatedly asserted that they are entitled to know from the indictment when and where the defendant Harry Bridges allegedly became a member of the Communist Party, as a matter of pleading. There is no occasion to be any more precise than to state that from 1933 up to and including September 17, 1945, the defendant, Bridges, belonged to the Communist Party.[3]

(9) *Challenge of the Defendant to the Grand Jury*

The defendants charge that the Grand Jury which returned the indictment was not selected according to law, that the Grand Jurors were disqualified, and they challenge the entire Grand Jury array.

This Court has already passed upon the subject matter of this objection; it is settled and at rest. See Thiel v. Southern Pacific Co., D.C. 67 F.Supp. 934, affirmed 9 Cir., 169 F.2d 30, certiorari denied 335 U.S. 872, 69 S.Ct. 162. See also opinion of Judge James Alger Fee in Local 36 et al. v. U. S., 9 Cir., 1949, 177 F.2d 320; Judge Louis E. Goodman, on "Federal Jury Selection," 6 F.R.D. 253.

(10) *Defendants' Request for Minutes of Grand Jury*

There is no showing made before this Court that would impel the conclusion that there was no legal evidence before the Grand Jury which justified the return of the indictment. See U. S. v. Foster, supra, 80 F.Supp. at page 483; Stewart v. U. S., 8 Cir., 300 F. 769; U. S. v. Antonelli Fireworks Co., D.C., 53 F.Supp. 870, 876. There is no merit to the request; therefore, it is Denied.

Accordingly, all and singular, the Motions, including the Motions to Dismiss, on the part of the defendants are, and each of them is, Denied.

The Court reserves ruling on the Motions for Discovery and Bill of Particulars.

The Government may present herein an order based upon the foregoing.

---

3. Authorities such as U. S. v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588, and Fontana v. U. S., 8 Cir., 262 F. 283, cited by defendants are distinguishable.